## Burchard *v.* Seber, Appellant.

Argued November 17, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Stuart A. Culbertson,* with him *Paul E. Allen,* for appellant.

*Fred C. Kiebort,* with him *F. Joseph Thomas,* and *Humes & Kiebort,* for appellees.

Opinion by Mr. Justice O'Brien, March 16, 1965:

Richard A. Burchard, Donald Beuchat and Charles J. Roae, on October 30, 1959, were passengers in an automobile owned and being operated by Harold W. Seber. While Seber was driving east on Route 27, between 7:30 and 8:00 a.m., he came into collision with a truck owned by Duane Troyer and operated by Michael Bailey. The truck had suffered engine trouble and was parked partially on the highway in Seber's lane of travel.

As a result of the collision, Burchard was killed and Beuchat and Roae were injured. Burchard's administratrix and Beuchat brought actions of trespass against Seber, Troyer and Bailey, and Roae brought an action of trespass against Troyer and Bailey, who joined Seber as an additional defendant. The cases were consolidated for trial and resulted in jury verdicts for Burchard's administratrix, under the Wrongful Death and Survival Acts, and for Beuchat and Roae, against Troyer and Bailey only, Seber being exonerated of liability by the jury.

Troyer and Bailey moved for judgments n.o.v. and for new trials, and the plaintiffs moved for new trials as to Seber. Subsequently, Troyer's insurance carrier paid the verdicts, up to the limit of its coverage, leaving a portion of the verdicts unpaid. Troyer and Bailey were then in the position of pursuing their new trial motions in order to try to salvage contribution from Seber, and the plaintiffs were in the position of pursuing their new trial motions in order to collect that portion of their verdicts not accounted for by the

payment made by Troyer's carrier. The court below held that the verdict exonerating Seber was contrary to the evidence and ordered new trials limited to the issue of the negligence of Seber; these appeals followed.

There is no significant dispute as to the facts of the case, they being well summarized in the opinion of the court below, as follows: ". . . the defendant Michael Bailey was operating a tractor trailer loaded with lumber in an easterly direction on Route 27 which is the main highway between Meadville and Titusville in Crawford County. The highway is concrete covered with asphalt, but only sixteen feet wide according to the State Policeman who investigated the accident.

"While Mr. Bailey was so proceeding he came around a sharp curve to the right and then proceeded up a long, fairly steep grade known as the Chapmanville Hill. According to the state policeman, there is a straight stretch up the grade 1000 feet in length before the road again curves to the left. As Mr. Bailey proceeded up the hill, the motor of his tractor began sputtering and finally stopped. He tried to get it started again but it wouldn't start, so he left the outfit drift backward and off on the berm as far as he could get and stopped again. Witnesses differed as to how far up the hill this equipment was when it stopped; the state policeman estimated the distance at 850 feet while several other witnesses including the defendant Seber said it was 500 to 600 feet, but no one testified that it was less than 500 feet. Witnesses also differed as to how much of the tractor trailer extended onto the hard surfaced portion of the road. The state policeman said two feet and five inches while several other witnesses testified that it took up at least half of the eastbound lane which would be approximately four feet. In any event, the tractor trailer was disabled and parked partly on the hard surface portion of the highway.

"Unfortunately for motorists proceeding easterly toward Titusville that morning, the rising sun struck them squarely in the eyes as they rounded the curve and it was difficult to see going up the hill. At least a half dozen such motorists testified that they came up the hill and nearly struck the truck because of being blinded by the sun but fortunately saw it in time to avoid an accident. Not so, however, with Mr. Seber. He came along with Mr. Burchard riding in the front seat and Mr. Beuchat and Mr. Roae in the rear seat and ran smack into the left rear corner of the trailer, and as a result, Mr. Burchard was killed and Mr. Beuchat and Mr. Roae received extremely serious injuries. The impact was so great that it not only demolished Mr. Seber's car, but also apparently moved the trailer sideways although it was loaded with 26,800 pounds of lumber and weighed 10,500 pounds itself. The impact also tore out and broke the back axle of the trailer."

From this fact situation, we must determine whether the court below properly granted a new trial limited to the issue of Seber's negligence. In so determining, we are bound by the oft-stated rule that the grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case. *Cinciripini v. Harmony Short Line,* 416 Pa. 231, 205 A. 2d 860 (1965); *Weed v. Kerr,* 416 Pa. 233, 205 A. 2d 858 (1965), and cases cited therein.

The court below found that the negligence of Seber was clearly established by the evidence and that justice dictated a new trial on that issue. This holding is virtually compelled by the testimony of Seber himself. On direct examination by his counsel, he testified as follows: "Q. Now, as you rounded this curve, what if anything, happened, did you notice or were you aware of? A. As soon as I rounded the bend, why the

sun hit me in the eyes. Q. The sun hit you in the eyes. And what kind of a morning was it that morning? A. It was a nice morning. Q. A nice morning. A. For fall. Q. All right, now what did you do when you rounded the curve, at the bottom of the curve the right curve and noticed the sun hitting you in the eyes as you call it, you say you slowed down? A. Well, when the sun hit me in the eyes, I slowed down and I was following the white line to make sure I didn't cross into the traffic—of oncoming traffic. Q. Could you see anything ahead of you on that highway other than the white line? A. Yes, I could see the portion of the highway, I couldn't see too far ahead of me. Q. You couldn't see too far ahead of you, because of the sun? A. That's right. Q. All right, and could you see down at the side of you on the berm, see the berm on the right? A. On the right side. Q. The right side. A. I believe so, yes. Q. Now, after you slowed your car down after you went around this curve and were confronted with the sun, and said you saw a white line, what if anything, happened as you started up the hill? Did you see anything as you went on up the hill and were watching the white line to see that you didn't get over onto the other side? A. I don't remember of seeing the truck I hit. A. Well, did you see it at all before you struck? A. I don't remember of seeing it, no."

On cross-examination, Seber testified as follows: "Q. You went into this curve, if I understand you, about 50 miles an hour? . . . A. Before the curve, I was driving probably 50 miles an hour and when I went around the curve 40 to 45. Q. Around the turn at 40 to 45? A. That's right. Q. And that's the turn at the foot of the hill? A. That's right. Q. Then you proceeded at that rate up the hill? A. No, I slowed down when the sun hit me in the eyes. Q. Slowed down to what? A. I don't know, I wasn't watching the speedometer, I was watching the road. Q. Were you

watching the road on the side or ahead of you? A. Ahead of me. Q. And you didn't see anything? A. No, I didn't. Q. This accident happened on a straight road, didn't it? A. Yes, it did. Q. And why didn't you watch ahead of you? A. I was watching ahead of me, as far as I could see. Q. But you couldn't see this truck? A. I didn't see it, no. Q. You didn't see it— but you did hit it? A. I did hit it. . . . Q. I believe you said you couldn't see too far ahead as you went up the hill. A. That's right. Q. Nevertheless, you kept right on going? Mr. Culbertson: I object to this, there is no law that says he has to stop. Court: Objection overruled. Q. You kept on going, didn't you? A. I kept on going, but I was slowing down at the same time. Q. You hadn't slowed down enough so that you could stop your car when this truck appeared in front of you? A. I didn't see the truck. Q. You didn't see it? A. No. Q. Why didn't you see it? Mr. Culbertson: I object to this as being argumentative. Q. You ought to have some explanation why you didn't see it, if it was there. A. The sun was in my eyes. Q. The sun didn't flash suddenly in your eyes, did it? A. It did when I rounded the bend at the bottom of the hill. Q. You mean it was just a flash of sun? A. No, it wasn't a flash. Q. The sun was in your eyes all the way up the hill, was it? A. Yes, it was."

In light of this testimony, we must agree with the court below that the exoneration of Seber by the jury was in capricious disregard of the evidence. This is not a case where a driver is suddenly and momentarily blinded. Here, Seber continued to drive his automobile for at least 500 feet, and possibly as far as 850 feet, at a time when, by his own admission, he was blinded by the sun. He continued to drive under these adverse conditions at a rate of speed sufficient to move an 18½ ton loaded trailer and demolished his own vehicle.

" 'Where a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice . . .' ". *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864 (1961) and cases cited therein. Here, the court below properly executed its duties.

The only remaining question is whether error can be found in limiting the new trial in the manner of the order of the court below. We find no such error. The liability of defendants Troyer and Bailey is not in issue and a full and fair determination of the damages has already been made. The only question remaining is Seber's negligence and, that being the situation, it is proper to limit the new trial to that sole issue. Cf. *Nakles v. Union R. E. Co. of Pgh.,* 415 Pa. 407, 204 A. 2d 50 (1964); *Berkeihiser v. DiBartolomeo,* 413 Pa. 158, 196 A. 2d 314 (1964); *Daugherty v. Erie R. R. Co.,* 403 Pa. 334, 169 A. 2d 549 (1961).

Order affirmed.

Mr. Justice ROBERTS, with whom Mr. Chief Justice BELL and Mr. Justice JONES join, dissents and would reverse the grant of the limited new trial.