493 A.2d 669

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased, Appellee,

v.

CITY OF PHILADELPHIA, William Smith, Srein Furniture
Carriers, Inc., & Commonwealth of Pennsylvania.

Appeal of COMMONWEALTH of Pennsylvania.

Joan G. THOMPSON, Administratrix of the Estate of
Raymond D. Thompson, Deceased, Appellee,

v.

CITY OF PHILADELPHIA, William Smith, Srein Furniture
Carriers, Inc., & Commonwealth of Pennsylvania.

Appeal of CITY OF PHILADELPHIA.

Supreme Court of Pennsylvania.

Argued Oct. 24, 1984.

Decided June 4, 1985.

Hutchinson, J., filed concurring opinion.

Larsen, J., filed dissenting opinion in which Papadakos, J., joined.

594

Ronald Yen, Deputy Atty. Gen., Philadelphia, for the Commonwealth.

Michael B. Tolcott, Marilyn Kutler, Asst. Cty. Solicitors, Philadelphia, for City of Philadelphia.

Richard L. Polin, Philadelphia, for Joan Thompson.

James M. Marsh, Philadelphia, for Wm. Smith & Srein Furn. Carriers.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The issue before us is one of first impression. The question is whether and under what circumstances a trial court may order a new trial for the apportionment of damages under the doctrine of comparative negligence.[1]

On September 28, 1976, William Smith drove a tractor trailer through a guardrail at the end of the Spring Garden

---

1. The doctrine of comparative negligence has been adopted by statute in this Commonwealth. Act of April 28, 1978, P.L. 202, No. 53, § 10(89), as amended October 5, 1980, P.L. 693, No. 142, § 222(a), 42 Pa.C.S. § 7102.

Street exit ramp of the Schuylkill Expressway in Philadelphia, and plunged onto the Expressway's westbound lanes, crushing the vehicle of plaintiff's decedent. Plaintiff instituted negligence actions in the Court of Common Pleas of Philadelphia against Smith and his employer, Srein Furniture Carriers, Inc., the Commonwealth of Pennsylvania, and the City of Philadelphia, to recover under the wrongful death and survival statutes [2] for the death of her husband. These actions were consolidated and tried before a jury.

Plaintiff proceeded against Smith and Srein on the basis of Smith's negligent operation of the tractor trailer, and Srein's vicarious liability for Smith's negligence under the doctrine of *respondeat superior*. Plaintiff's theory of recovery against the Commonwealth was its failure to use reasonable care in the posting of signs on the Expressway, thereby causing Smith to be confused. As to the City, plaintiff's allegations of negligence focused on the inadequacy of visible signs on the ramp, and the City's failure to provide adequate guardrails and barriers at the end of the ramp.

During the trial, Smith and Srein settled with plaintiff for $400,000, but retained a right of contribution from the other defendants according to the jury's apportionment of liability. The jury awarded damages totaling $500,000,[3] assessing the negligence of the City as 35%, the Commonwealth as 35%, and Srein and Smith, employer and employee, as 30%.

■ After the verdict, and before argument on post-trial motions, the City and the Commonwealth settled with plaintiff for $32,500 each and were given a joint tort-feasor release from plaintiff. The release was expressly made

**2.** Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. §§ 8301, 8302.

**3.** The $500,000 verdict was comprised of a $400,000 award on the survival action and a $100,000 award for the wrongful death. Since the Commonwealth had not been timely sued for wrongful death, the lower court vacated the Commonwealth's portion of the $100,000 wrongful death award, reducing the total verdict to $465,000.

subject to provisions of the Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S. § 8321 *et seq.*[4]

The trial court denied the City's and the Commonwealth's motions for Judgment N.O.V. as well as the City's motions for a remittitur, reduction of the verdict, and motion to mold the verdict. However, the trial court did grant the City and the Commonwealth a new trial as to the comparative negligence of the defendants, stating that "the jury's apportionment of fault among the defendants is manifestly and palpably against the weight of the evidence." Slip op., 4180 C.P. Phila., March Term, 1977, at 7.

On appeal the Superior Court reversed and entered judgment upon the jury's verdict. Writing for the majority, Judge Hoffman determined that the trial court's order "exceeds the limited standards for the grant of a new trial because of the weight of the evidence." *Thompson v. City of Philadelphia,* 320 Pa.Super. 124, 133, 466 A.2d 1349, 1353 (1983).

■ Initially the Superior Court held, in effect, that the power to grant a new trial is as inherent in a trial court for the apportionment of liability as the power exists for all the traditional reasons for granting a new trial. We agree. There is no reason to believe that injustice cannot be perpetrated by a misapportionment of responsibility. A jury is no freer under comparative negligence to ignore the weight of evidence, misapply the law, or fail of justice by a manifestly unreasonable resolution of the evidence than they were under any previous doctrine.

■ However, in measuring whether a new trial ought to be granted, the Superior Court panel adopted the view that a grant is a most "unusual" judicial act and if there is "any credible evidence which under any reasonable view supports

4. The settlements with plaintiff did not render the dispute as to the apportionment of liability moot, since the ultimate apportionment of liability in this case will govern the defendants' rights of contribution amongst each other in a pending contribution action. 42 Pa.C.S. § 7102(b). Review of the verdict will not force plaintiff to relitigate her claim, nor will it violate the integrity of the settlements.

the jury's findings" the verdict should be sustained. At first blush that would sound as though the standards differ for a new trial to apportion liability than they do where liability itself is in question. We see no material difference; the standards are the same. A new trial should be ordered whenever the exercise of careful discretion sounds the presence of an injustice; and it was error in the present instance for the Superior Court to reverse the grant of a new trial.

■ This Court has repeatedly emphasized that it is not only a trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. *Burchard v. Seber,* 417 Pa. 431, 438, 207 A.2d 896, 899 (1965); *Frisina v. Stanley,* 409 Pa. 5, 7, 185 A.2d 580, 581 (1962); *Kiser v. Schlosser,* 389 Pa. 131, 133, 132 A.2d 344, 345 (1957). Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Burrell v. Philadelphia Electric Company,* 438 Pa. 286, 265 A.2d 516 (1970).

In *Nehrebecki v. Mull,* 412 Pa. 438, 194 A.2d 890 (1963), Mr. Justice Eagen, speaking for a unanimous court, not only defined the duty to grant a new trial, but delineated the duty of an appellate court to give the gravest consideration to the findings and reasons advanced by the trial judge.

We have repeatedly said that we will not reverse the grant of a new trial, unless there was a clear abuse of discretion, or an error of law which controlled the outcome of the case: *Segriff v. Johnston,* 402 Pa. 109, 166 A.2d 496 (1960); *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A.2d 864 (1961); *Feltovich v. Sharon,* 409 Pa. 314, 186 A.2d 247 (1962).

As stated in *Lenik Condemnation Case*, 404 Pa. 257, 172 A.2d 316 (1961), at 259: "One of the least assailable reasons for granting a new trial is the lower court's conviction that the verdict was against the weight of the evidence and that new process was dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action." In determining whether or not the grant of a new trial constituted an abuse of discretion, it is our duty to review the entire record: *Jones v. Williams*, 358 Pa. 559, 58 A.2d 57 (1948); *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961); *Feltovich v. Sharon, supra.*

*Id.*, 412 Pa. at 439–440, 194 A.2d at 890–891.

An appellate court by its nature stands on a different plane than a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123 (1969); *Anzelone v. Jesperson*, 436 Pa. 28, 258 A.2d 510 (1969); *Kiser, supra.* In that regard the Superior Court must review a trial court's decision to *grant* a new trial in the same manner as we have required review of the *denial* of a new trial. *See Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984).

In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial

judge's reasons should prevail. It is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence; not, however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." *Exner v. Gangewere*, 397 Pa. 58, 60, 152 A.2d 458, 460 (1959). Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

In the instant case the very careful and able Judge Charles Wright offered his reasons for the grant of a new trial.

"A fair reading of the record in this case leads this court to the conclusion that the jury's apportionment of fault among the defendants is manifestly and palpably against the weight of the evidence. The uncontradicted evidence at trial revealed that one-half mile from the Spring Garden Street ramp was a sign that read "Spring Garden Street Exit One-Half Mile". The sign was 12 feet 6 inches by 11 feet 6 inches (N.T. 248–249). At the ramp itself, there was a sign that read, "Spring Garden Street", which was 12 feet by 10 feet and externally lighted. (N.T. 252–254) There were at least 880 feet of unobstructed sight line from the expressway to the ramp. (N.T. 555) A sign that read "Exit, 25 Miles Per Hour" was located at the bottom of the exit ramp. (N.T. 131) This sign was yellow with black letters and was in good condition. (N.T. 131) At the top of the ramp were two stop signs which were 36 inches in diameter. (Exhibit P–15, N.T. 721.) One was placed on either side of the roadway. These signs were in good condition and clearly

visible. (N.T. 130–131) Defendant Smith was operating his tractor-trailer at 40–45 M.P.H. when he went through the stop signs. (N.T. 93). A witness directly behind the Smith vehicle testified that the tractor-trailer went through the stop signs without stopping. (N.T. 164) The defendant Smith testified that he did not see the stop signs although he offered no excuse for failing to see them. (N.T. 21, 49, 51) The defendant Smith testified that he did not see the sign that read "Exit Speed 25 Miles Per Hour" and again offered no excuse for his failure to do so. (N.T. 49) Hence this court refuses to accept the jury's apportionment of damages to the defendant Smith where he failed to follow posted traffic directional signs, ignored posted traffic speed signs, and states that he did not see either one of two stop signs even though the evidence clearly establishes that he should have seen those signs."

Slip opinion, *supra* at 7–8.

The Superior Court panel did not find that these facts were not of record or that if true they would not support a conscious shocking paradigm. The Superior Court instead, countered the argument by finding that expert testimony suggested that the highway junction was ill designed and therefore the jury could find justification for their apportionment of liability. The jury could and did do exactly that. That, however, begs the question before us; the question being whether the trial judge's reasons for his act in granting a new trial were justified. If he was supported by facts of record, the very point of his grant is that, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. We cannot find it wrong to believe that an inattentive driver barrelling into a marked exist ramp at 40–45 miles an hour, who did not stop for a "clearly visible" stop sign because he did not see it, and who was unable to control his vehicle at the intersection, is more at fault than those who maintain the road he was not sure he was on.

 The order of the Superior Court is reversed and the order of the trial court is reinstated. The record is remanded to the Court of Common Pleas of Philadelphia for a new trial, limited to the issue of the apportionment of negligence.[5]

HUTCHINSON, J., joins this opinion and files a separate concurring opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

HUTCHINSON, Justice, concurring.

I join Mr. Justice McDermott's opinion. I write separately only to emphasize that the scope of review on appeal from a trial court's decision to grant a new trial on the ground that the jury verdict is against the weight of the evidence is extremely narrow. "Where ... the court below has concluded that the verdict of the jury is contrary to the weight of the evidence and that the interests of justice require granting of a new trial, this Court is most hesitant to disturb such conclusion." *Martin v. Arnold,* 366 Pa. 128, 131, 77 A.2d 99, 101 (1951). Superior Court exceeded its scope of review when it reversed the order granting a new trial. When the trial court takes the extraordinary step of granting a new trial, appellate courts in general and Superior Court in particular are under the same compulsion to defer to the trial court's discretion in granting the new trial as they would be in reviewing its denial. *Lobozzo v. Adam Eidemiller, Inc.,* 437 Pa. 360, 263 A.2d 432 (1970); *Anzelone v. Jesperson,* 436 Pa. 28, 258 A.2d 510 (1969).

---

5. We do not interpret the trial court's order to necessitate a retrial of the plaintiff's verdict. Rather, any retrial is to be limited to the issue of apportionment of negligence against the three defendants, each of whom was found to be negligent to some extent. Finally, we note that in this appeal the Commonwealth has separately challenged the trial court's refusal to grant their motion for judgment N.O.V. A review of the record satisfies us that a jury could have properly found that the Commonwealth was partially liable for the accident in question. Therefore, we detect no error in the decision of the trial court.

LARSEN, Justice, dissenting.

I dissent. I would affirm on the basis of the Superior Court opinion filed in this matter. *Thompson v. City of Philadelphia, et al.*, 320 Pa.Super. 124, 466 A.2d 1349 (1983). I would further hold that any jury verdict that is supported by any credible evidence is unassailable.

PAPADAKOS, J., joins this dissenting opinion.