## Ipjian v. Bender

C.P. of Dauphin County, no. 722 S 2001.

*Dennis Sheaffer,* for plaintiffs.
*Brooks Foland,* for defendants.

TURGEON, *J.,* June 20, 2002—On February 26, 2002, a jury rendered a verdict in favor of defendants Harold Bender and Lewis Lumber Products Inc. finding them not liable for causing injuries allegedly sustained by plaintiff Brian Ipjian in an automobile accident. Plaintiffs have filed a post-trial motion seeking a directed verdict on the issue of causation and a new trial limited to damages, or alternatively, a new trial on both issues of causation and damages. For the reasons set forth below, plaintiffs' motion for a new trial, on both causation and damages, is granted.

## FACTS

The relevant evidence adduced during the two-day jury trial was as follows: Plaintiff Brian Ipjian was driving three of his children to school on the morning of Friday, November 5, 1999. Plaintiff, who had been stopped at a stop sign, began to make a right turn into an intersection when he had to stop due to oncoming traffic. Plaintiff, driving a 1992 Dodge Grand Caravan minivan, was struck from behind by a 22,000 pound lumber delivery truck driven by defendant Harold Bender for his employer, defendant Lewis Lumber Products. (N.T. 16-17, 19, 75, 79.) Defendant Bender had been behind plaintiff at the stop sign and had also made a right turn into the

intersection, not noticing traffic had stopped in front of him. (N.T. 17, 47.) Plaintiff described the impact as similar to "a big explosion" which moved his vehicle forward several feet despite his foot resting on the brake. (N.T. 17, 19.) The impact shattered the vehicle's back window, broke the tail lights and bent the tailgate. (N.T. 19-20, 77, 80.) Cost of repairs were about $2,000. (N.T. 38.)

Defendant Bender admitted his negligence in striking plaintiff's minivan. (N.T. 81.) He testified that just prior to striking the minivan, he had been at a full stop and traveled about one to two car lengths before striking plaintiff's minivan and that he did not apply his brakes. (N.T. 76-77, 80.) He had no idea how fast he was traveling upon impact. (N.T. 80-81.) Defendant Bender was not injured and his truck was not damaged. (N.T. 77.)

Plaintiff pulled his minivan off the road, checked on his children and sat down on the curb.[1] He testified he felt an immediate aching in his neck and in his left shoulder area where his seatbelt came across him. (N.T. 18, 48.) After being attended to by EMTs, plaintiff drove the van a few blocks back to his home. (N.T. 20.) Mrs. Ipjian confirmed that her husband complained of neck and arm pain the day of the accident. (N.T. 69.)

Plaintiff testified that he visited his family physician, Scott Mueller M.D., that day, complaining of soreness in his neck and left shoulder. (N.T. 21.) Dr. Mueller reported that he examined plaintiff on the day of the accident and found him tender over his neck muscles and his

---

1. Defendants note in their brief in opposition to the post-trial motion that all claims involving the minor children were settled prior to trial for what defendants claim was a nominal amount.

upper left trapezius (shoulder). He prescribed an anti-inflammatory and muscle relaxant. (Dr. Mueller dep. at 8.) Dr. Mueller examined plaintiff five days later, on November 9, 1999, noting plaintiff complained of left elbow pain and tingling in his fourth and fifth fingers of his left hand. Dr. Mueller concluded he had an inflamed ulnar nerve and ordered an x-ray of plaintiff's elbow, which was negative. (Dr. Mueller dep. at 9.) Dr. Mueller also ordered an MRI of plaintiff's cervical area to find out whether the source of the hand numbness was the ulnar nerve of the neck area. (Dr. Mueller dep. at 11.) The MRI was normal. (Dr. Mueller dep. at 12.) Dr. Mueller restricted plaintiff from work as a corrections officer at SCI Camp Hill through January 17, 2000. (N.T. 22-24; plaintiffs' exhibit 1.) Plaintiff met with Dr. Mueller for a third time January 13, 2000. Dr. Mueller released him back to work with no restrictions.[2] (N.T. 50.) Plaintiff denied ever having had any problem with his left shoulder, neck, arm, elbow or hand prior to the November 5, 1999 accident, for which he sought medical treatment. (N.T. 39.)

Dr. Mueller saw plaintiff for a third visit on January 13, 2000. Plaintiff noted improvement but still complained of some pain associated with too much activity. (Dr. Mueller dep. at 10.) Dr. Mueller found plaintiff still had ulnar nerve inflammation and some neck strain. (Dr. Mueller dep. at 13.) Dr. Mueller then saw plaintiff January 27, 2000, to assess his progress after having resumed work. He reported plaintiff was having some shoulder

---

2. Plaintiff missed a total of 54 scheduled work days, incurring $4,736.18 in unreimbursed lost wages. (N.T. 26; plaintiffs' exhibits 2, 5.)

pain and some left hand tingling, but that his symptoms had not aggravated. (Dr. Mueller dep. at 14.) Plaintiff did not see Dr. Mueller again until December 11, 2000. He complained then, according to Dr. Mueller, of some left shoulder and neck pain and a lack of range of motion. (Dr. Mueller dep. at 17.) At one last visit, December 20, 2001, Dr. Mueller reported that plaintiff had no complaints except a decreased range of motion. (Dr. Mueller dep. at 18.)

Dr. Mueller, who has been plaintiff's treating physician for over 15 years, testified, within a reasonable degree of medical certainty, that plaintiff suffered neck, left shoulder, left arm and hand problems as the result of the automobile accident. (Dr. Mueller dep. at 16.) His diagnosis was cervical strain and left ulnar nerve palsy. (Dr. Mueller dep. at 24.) He noted that such injuries typically heal within four to eight weeks but can take longer. (Dr. Mueller dep. at 24.) Dr. Mueller described plaintiff as not a malingering type but one who might actually under-exaggerate complaints. (Dr. Mueller dep. at 19-20.)

As to plaintiff's prior history, Dr. Mueller confirmed that his partner treated plaintiff in January 1994 for neck pain, left hand numbness, stiff neck. These symptoms resolved with anti-inflammatories and muscle relaxants and resolved within a week. (Dr. Mueller dep. at 28.) Also, in March 1995, Dr. Mueller treated plaintiff for a stiff neck which also resolved within a week. (Dr. Mueller dep. at 28.)

Dr. Mueller referred plaintiff to Dr. Emily Matlin for a second opinion. Dr. Matlin, a physician with specialties in neurology and pain management, testified, within a reasonable degree of medical certainty, that plaintiff's

shoulder symptoms were referable to the automobile accident. (Dr. Matlin dep. at 15-16.) She evaluated plaintiff on March 1, 2000, at which time plaintiff complained of pain in the area of his left front shoulder where his seat belt crosses his shoulder. (Dr. Matlin dep. at 9.) Her exam revealed plaintiff had impaired left shoulder motion; the neurologic examination was otherwise normal. (Dr. Matlin dep. at 10.) She prescribed anti-inflammatories and physical therapy, of which plaintiff underwent four sessions. (Dr. Matlin dep. at 11, 20.) Therapy resolved plaintiff's tendonitis and tightness in the shoulder area as well as improving his 50 percent limit in his range of motion to 20 percent. (Dr. Matlin dep. at 12-13, 15.) She saw him last on May 12, 2000 and he reported nearly one-hundred percent resolution of his left shoulder symptoms. (Dr. Matlin dep. at 14.)

Plaintiff summarized his progress as follows: his neck pain resolved within a few days of the accident, his left arm and hand problems within a few months of the accident, and his shoulder pain resolved by May of 2000 following physical therapy, although, as of the trial, he had range of motion problems and some aggravating tenderness. (N.T. 35.)

The defendants did not seek an independent medical examination of plaintiff and presented no medical testimony. (N.T. 83.)

As to pre-existing conditions, plaintiff admitted to having been involved in motor vehicle accidents in 1991 and 1997 and claimed to have suffered lower back pain in those accidents. (N.T. 38.) To the extent he had suffered any neck pain from those accidents, he testified it was very minor and quickly resolved. (N.T. 39.)

During cross-examination, plaintiff admitted that in a prior deposition he had stated that he had never had a problem with his left shoulder or neck prior to the November 5, 1999 accident. (N.T. 55.) However, on cross, plaintiff admitted to two pre-accident work-related incidents in which he claimed injury to his left shoulder or neck area: in October 1993, plaintiff claimed to have "pulled a muscle in his left shoulder" and complained of left shoulder and neck pain restraining an inmate; and in May 1998, plaintiff filed an employee incident report claiming a "stiff neck, left side, pain in shoulder area" as a result of having been backed up into while on patrol in a security vehicle. (N.T. 57-60, defense exhibits 2A, 4A.) Defendant also put in evidence two other work-related reports involving complaints of injury to plaintiff's left arm (not involving the shoulder or neck): in May 1993, plaintiff reported an injured left wrist and elbow trying to subdue an inmate, and in July 1996, he filed an incident report claiming that while "making rounds felt pain in chest—and left arm causing fingers in left hand to go numb." (N.T. 57-60, defense exhibits 1A, 3A.) Plaintiff explained that he was required by work rules to report all these incidents and that he did not seek medical attention outside of the infirmary for any of them. (N.T. 61.)

At the conclusion of trial, the jury was provided with a verdict slip containing three special interrogatories. The defendants admitted, in the first interrogatory, that defendant Bender had negligently driven his truck. The jury was then asked to decide two questions; whether the negligence was "a substantial factor in bringing about the plaintiff's harm" and if so, the amount of damages plain-

tiffs were entitled to.[3] The jury answered "no" to the question whether the negligence was a substantial factor and thus did not reach the question of damages.

## LEGAL DISCUSSION

The plaintiffs argue the evidence was so weighty in his favor that the jury's verdict—finding Mr. Ipjian did not suffer any harm from the accident—requires a new trial on this issue as well as damages. In the alternative, plaintiffs request the court direct a verdict finding defendants liable for Mr. Ipjian's harm and limiting a trial to the issue of damages alone.

A new trial is properly granted where the verdict is against the weight of the evidence. *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (1985). Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge would have arrived at a different conclusion, a new trial should be awarded where a jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Id.*

A motion for judgment n.o.v. can be entered where the evidence is insufficient to support the verdict. *Lilley v. Johns-Manville Corp.,* 408 Pa. Super. 83, 91, 596 A.2d 203, 206 (1991), *appeal denied,* 530 Pa. 644, 607 A.2d 254 (1992).

The entry of judgment notwithstanding a jury verdict is a drastic remedy. A court cannot lightly ignore the findings of duly-selected jury. Thus, in considering a motion

3. Plaintiffs were referred to in the plural on the damages section of the verdict form since Mr. Ipjian's wife sought loss of consortium.

for judgment n.o.v., the court must view the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the verdict winner. The court can enter judgment n.o.v. only if no two reasonable persons could fail to agree that the verdict is improper. *Nogowski v. Alemo-Hammad,* 456 Pa. Super. 750, 759-60, 691 A.2d 950, 955 (1997).

Plaintiffs claim the only way the jury could have reached its verdict was to capriciously disregard all the evidence which was submitted. Plaintiffs note the evidence was uncontradicted that Mr. Ipjian suffered injuries to his neck, left shoulder and left arm in the accident, that he had no injuries prior to the accident, that Dr. Mueller's examinations indicated objective findings consistent with plaintiff's complaints, that both Drs. Mueller and Matlin rendered opinions that plaintiff's injuries were caused by the accident, that no contrary medical opinion was put forth as to causation and that the accident was more than minor, involving an 11-ton truck.

"[T]he jury is free to believe all, some, or none of the testimony presented by a witness. . . . However, this rule is tempered by the requirement that the verdict must not be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial. . . . The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison v. Hines,* 539 Pa. 516, 520-21, 653 A.2d 634, 637 (1995). (citations omitted)

The main issue before the court is whether the jury's finding—that the defendants' negligence was not a substantial factor in causing the plaintiff's harm—was against the weight of the evidence such as would warrant a new trial. This issue has been recently addressed by our appellate courts on numerous occasions. Just in the last year in *Majczyk v. Oesch,* the Superior Court reviewed the case law on the issue of "whether the jury may return a [defense] verdict, . . . or a verdict finding that the defendant's negligence was not a substantial factor in causing the plaintiff's harm, where the defendant's medical expert concedes that the plaintiff sustained *some* injury as a result of the accident." 789 A.2d 717, 722 (Pa. Super. 2001) (en banc). (emphasis in original) (citations omitted) The court concluded that the synthesis of its decisions is that "where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause *compensable* pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant."[4] *Id.* (emphasis in original) See also, *Mad-*

---

4. The issue of whether an injury is compensable is one which has been explored by our appellate courts in a number of recent decisions, including *Majczyk; Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764 (2001) and *Monschein v. Phifer,* 771 A.2d 18 (Pa. Super. 2001). These cases all stand for the proposition that where a defendant is negligent and the negligence causes an injury, the jury may nevertheless refuse to award the plaintiff pain and suffering damages, if it is reasonable for the jury to determine the injury is non-compensable. It is important to note that in this case, the issue of whether plaintiff's injuries are compensable is not before us since the jury did not reach the issue of damages, as it did in the cases cited above. Thus, plaintiff's reliance on *Monschein* and defendants' reliance on *Davis,* is misplaced. Had the jury in this case found legal causation but awarded no damages, these cases would have been relevant to our analysis.

*den v. Mano,* 738 A.2d 493, 497 (Pa. Super. 1999) (en banc) ("It is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question," thus, a new trial was awarded where the jury returned a verdict that defendant's negligence in causing a rear-end collision was not a substantial factor in causing plaintiff's harm where the defense expert conceded plaintiff suffered some injury, albeit a mild one (neck and back strain)).

Just a few weeks ago, the Superior Court revisited this issue in *Andrews v. Jackson,* 2002 Pa. Super. 173 (June 3, 2002). In *Andrews,* the trial court granted a new trial where the jury found that the defendant's negligence in causing a vehicle collision was not a substantial factor in causing plaintiff's injuries and awarded no damages. The new trial was warranted because the jury disregarded uncontroverted testimony that plaintiff suffered some injury, even though defendant's expert claimed the injury was a minor soft-tissue injury (cervical strain). The Superior Court upheld the grant of a new trial, finding that "[w]here there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused some injury to the plaintiff, the jury may not find that the defendant's negligence was not a substantial factor in bringing about at least some of plaintiff's injuries." *Id.* at ¶12.

Defendants contend these holdings are not applicable since they have not conceded or agreed that plaintiff sustained an injury in this case. Indeed, the cases cited above all involved cases in which the defendant presented ex-

pert testimony which indicated that the plaintiff had suffered some injury, even if minor, as a result of negligence. The defendants in this case presented no expert medical testimony. A similar situation was presented to the Superior Court in *Kruczkowska v. Winter,* 764 A.2d 627, 631-32 (Pa. Super. 2000). There, the court held a new trial must be granted where the jury found defendant's negligence was not a substantial factor in causing plaintiff's harm. The jury had initially concluded defendant was negligent for hitting plaintiff's bicycle and running over her foot. Plaintiff's medical expert, the only one produced at trial, testified plaintiff suffered accident-related thoracic and lumbosacral sprain and strain as well as hip and foot contusions. Defendant tried to distinguish the line of cases where new trials had been granted noting that in all those cases, *both* parties' medical experts had agreed or conceded the existence of some accident-related injury. Defendant had not presented an expert and suggested that the jury was not required to accept the testimony of plaintiff and her expert, even if uncontradicted. *Id.* at 629. In addressing this distinction, the *Kruczkowska* court, quoting from an earlier decision in *Hawley v. Donahoo,* 416 Pa. Super. 469, 611 A.2d 311 (1992), stated as follows:

"While the jurors are the sole judges of credibility, and [plaintiff's] inconsistent and perhaps exaggerated testimony could have been perceived as an indication of [plaintiff's] interests of opportunity beyond pain which could dilute their belief in the existence of the occasion itself, the jury is not free to ignore an obvious injury. As our Supreme Court stated in *Thompson v. Iannuzzi,* 403 Pa. 329, 169 A.2d 777 (1961): 'It is true that the jury is the final arbiter of facts but it may not, in law, ignore

what is patent to the eye, obvious to the mind and clear to the normal process of ordinary computation.' *Id.* at 332, 169 A.2d 778-789. *Hawley,* 611 A.2d at 313.

"As in *Hawley,* in the present case, the jury's refusal to believe in the existence of the sprained ankle was unwarranted. While there existed no admission from a defense expert witness that Kruczkowska suffered an injury during the accident, the existence of a sprained ankle was not questioned by Winter during her cross-examination of Kruczkowska and Dr. Gurkaynak. Rather, Winter's cross-examination of both Kruczkowska and Dr. Gurkaynak revealed only a dispute about the severity of Kruczkowska's injury and how long and to what extent it impaired her normal activities.

"Although Winters notes Dr. Gurkaynak's credibility was called into question during cross-examination when she questioned his expertise in the field of orthopedic medicine, such questioning did not call into question whether Kruczkowska suffered any injury. Rather, it only spoke to the doctor's credentials." *Kruczkowska* at 630.

"While a jury may reject any and all evidence presented, it can only do so up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison, supra.* As in *Kruczkowska,* the jury's refusal here to believe the plaintiff's injuries were caused by this accident, was unwarranted. The uncontroverted evidence established that plaintiff's minivan was struck from behind by a 22,000 pound truck which did not brake prior to impact. The impact caused somewhat significant damage to the rear of the minivan. Plaintiff complained of immediate aching in his neck and in his left shoulder, pain which

Mrs. Ipjian confirmed. Dr. Mueller's examination, made on the day of the accident, indicated plaintiff was tender in his neck and shoulder. His next examination, five days later, revealed plaintiff was suffering from left elbow pain and numbness in two fingers. Dr. Mueller diagnosed plaintiff with cervical strain and left ulnar nerve palsy which typically heal within four to eight weeks. As a result of his injuries, Dr. Mueller restricted plaintiff from work for approximately two months. Almost all of plaintiff's injuries resolved within a few months of the accident except for some shoulder pain, which Dr. Matlin found to exist some four months after the accident. That pain resolved, however, after physical therapy sessions, although plaintiff complained of a lack of range of motion up to the date of trial. Both treating doctors testified plaintiff's injuries had been caused by the automobile accident.

While the defendant here, like the defendant in *Kruczkowska,* did not provide an expert who admitted the plaintiff suffered an injury from the accident, the *existence* of plaintiff's cervical sprain and ulnar nerve injury were not questioned by the defendants during their cross-examination. Defendants' cross of Dr. Mueller focused on the extent of plaintiff's shoulder injury, noting plaintiff had a new complaint of pain at the back of his shoulder for first time on January 27, 2000. (Dr. Mueller dep. at 23.) Dr. Mueller also stated on cross that plaintiff's cervical strain should have healed in four to eight weeks. (Dr. Mueller dep. at 24.) Defendants also questioned plaintiff's complaint of lack of range of motion since Dr. Mueller had not tested him prior to the accident and thus had nothing to compare his limitations to. (Dr. Mueller dep. at 30.) Dr. Mueller conceded the range of motion

limitation could have pre-existed the accident. (Dr. Mueller dep. at 30.) Importantly, however, Dr. Mueller did not concede any of plaintiff's other symptoms pre-existed the accident. Defendants' cross of Dr. Matlin also focused on the extent or scope of plaintiff's injuries. Dr. Matlin agreed that the only injury she was relating to the accident was plaintiff's left shoulder problem. (Dr. Matlin dep. at 17.) While defendants did raise questions about whether Dr. Matlin had been given an adequate history of plaintiff's pre-accident neck and/or shoulder injuries, she did not in any way admit she would have altered her conclusion that plaintiff suffered an accident-related shoulder injury. (Dr. Matlin dep. at 19.)

Our ruling is supported by the Supreme Court's decision in *Neison v. Hines, supra.* There, the court upheld the trial court's grant of a new trial where the defendant had admitted liability in causing a rear-end collision, yet the jury awarded no damages. The court concluded, as in this case, that the evidence was uncontroverted that the plaintiff had been involved in a violent automobile accident and had suffered from obvious injuries. *Id.,* 539 Pa. at 522, 653 A.2d at 637. Importantly, the court stated as follows:

"Thus, the uncontroverted medical evidence established that Ms. Neison suffered pain from a known medical source, a cervical sprain, fibromyalgia, and a herniated disk, much like the compression fracture in *Hawley.* We believe that these injuries are similar in type to the 'obvious injury' the Superior Court found in *Hawley,* and agree with the conclusion of that court that a jury cannot freely ignore evidence of obvious injury." *Id.* at 525-26, 653 A.2d at 639. Dr. Mueller's diagnosis was that the

accident caused plaintiff cervical strain and left ulnar nerve palsy. Under *Neison,* plaintiff's cervical sprain is an "obvious injury," as would be his ulnar nerve inflammation, which injuries the jury was not free to ignore.

Defendants contend the evidence of accident-related injury was not uncontroverted. They suggest the evidence of injury was inconsistent and, therefore, it was within the discretion of the jury to reject the unreliable testimony and accept that which was most credible. Specifically, they claim that the jury obviously concluded that the force of the impact was extremely minimal, as testified to by defendant Bender. Furthermore, they contend Drs. Mueller and Matlin's medical opinions were uninformed and misinformed because the doctors had not been given a complete and accurate medical history by plaintiff and the jury was thus free to disregard their testimony.

Initially, we note that while the accident might not be described as "serious," it could not be reasonably concluded to have been "extremely minimal," as it involved an 11-ton truck and relatively extensive damage to plaintiff's minivan. Regarding defendants' assertion that plaintiff suffered from pre-existing neck and shoulder injuries, the uncontroverted evidence revealed as follows: on two occasions plaintiff made a single visit to his family doctor complaining of neck pain and stiffness, both of which resolved within one week of his visits. Furthermore, the most recent of his two visits occurred in March 1995, more than four-and-one-half years before the accident in question. No jury could have reasonably connected those minor complaints to the accident in question, given the lengthy time gaps and given that defendants provided no medical testimony to support

such a connection. The same is true with defendants' attempt to tie plaintiff's work-related incidents with his accident-related complaints. None of the four incidents resulted in plaintiff seeking medical attention and the most recent occurred in May 1998, more than one-and-one-half years prior to the accident. Without the benefit of medical testimony, it would be unreasonable for a jury to believe plaintiff's injuries pre-existed the accident. Thus, since the medical testimony was uncontroverted that plaintiff suffered an injury as a result of the accident, the jury's verdict, finding no legal causation, was so contrary to the evidence as to shock one's sense of justice such that the award of a new trial is imperative so that right may be given another opportunity to prevail. *Thompson v. City of Philadelphia, supra.*

## ORDER

And now, June 20, 2002 plaintiffs' post-trial motion, in the nature of a motion for a new trial on the issues of legal causation and damages, is hereby granted.