J-S32042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONNY HOUGH, JR. | : | |
| | : | |
| Appellant | : | No. 171 WDA 2021 |

Appeal from the Judgment of Sentence Entered September 29, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001548-2019

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: NOVEMBER 19, 2021**

Ronny Hough, Jr. ("Hough"), appeals from the judgment of sentence imposed following his convictions of one count each of indecent assault and corruption of minors.[1] We affirm.

The trial court provided the following factual history:

> [Hough] is the uncle of the victim[,] Z.W.[ ("Z.W."),] and the brother of Z.W.'s mother, [N.C.] As presented at trial, [Hough] was in town for two (2) days to visit and collect some of his belongings that were being held at [N.C.'s] house. [Hough] does not visit often and has never spent the night at [N.C.'s] home. On the second day of his visit, December 14, 2018, [Hough], [N.C.] and another individual left [N.C.'s] residence to go to a club. Z.W., who was 12 years old at the time, remained home along with some of her siblings. [Hough] was staying at a housing facility named Resolve[,] which had a required check-in time, so he left the club early to return to [N.C.'s] house to collect his belongings. [N.C.] called the house to let her oldest child know

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a)(1)(i).

that [Hough] would be returning to get his things and that she could let him inside.

While [Hough] and [N.C.] were at the club, Z.W. was watching television with her younger brother in [N.C.'s] bedroom[,] located on the second floor. Z.W. testified that she was wearing a t-shirt, joggers[,] and underwear. From the second floor, Z.W. saw her older sister let [Hough] back into the house. [Hough] remained on the first floor and Z.W. returned to [N.C.'s] bedroom[,] where she fell asleep next to her two-year[-]old brother. She awoke upon feeling a hand on her buttock beneath her clothing and turned to see [Hough] behind her. Upon making eye contact with Z.W.[,] [Hough] told her, "It was an accident." Z.W. immediately ran from the bedroom and into another bedroom and tried to hold the door shut, but [Hough] was able to force his way in. She told him "[n]o" and fled to her bedroom on the third floor and locked the door. [Hough] followed her[,] and using a coin[,] unlocked the door and made entry. Z.W. was crying and continued to tell him "[n]o" while [Hough] hugged her, telling her everything is ok[ay] because they are family and not to tell [N.C.] what had happened.

[N.C.] called the house a second time to see if [Hough] had left. When she learned from her oldest child that he was still there, [N.C.] immediately returned home. Upon entering the house[,] she observed [Hough]'s belongings on the first floor and upon hearing noise upstairs, she ran in that direction and encountered [Hough] coming down the third-floor stairwell. [N.C.] began screaming for her daughters and asking [Hough] what he was doing. He appeared shaky and did not respond to her. Z.W. did not come out to her, and when [N.C.] made contact with her, Z.W. was crying and could barely speak, but eventually told [N.C.] what had happened. [N.C.] called 911. An argument ensued between [N.C.] and [Hough] that had spilled out of the house and into the street at the time police arrived.

Officer Adam Pernelli [("Officer Pernelli")] of the City of Pittsburgh Police Department responded to the 911 call. While on scene, [Hough] stated to him, "It's ok[ay], I'm her uncle, it's ok[ay] if I lay in bed with her." Officer Pernelli subsequently transported [Hough] to the station[,] where he was interviewed by Detective Joseph Lippert [("Detective Lippert")] of [the] Sexual Assault and Family Crisis (SAFC) division. [Hough] was

[*M*]*irandized*[2] and told Detective Lippert that upon returning to his sister's house from the bar he got into bed with his niece and nephew. He denied any inappropriate touching, admitting that he had rested his hand on Z.W.'s stomach over her clothing. [Hough] asked the detective if a sexual assault examination had been performed on [Z.W.] and if digital penetration could break a young lady's hymen. Detective Lippert did not interview Z.W.[,] but attended the forensic interview that was conducted on January 9, 2019. During this interview, Z.W. relayed the events of the night including that [Hough] had touched her buttock.

Trial Court Opinion, 6/21/21, at 3-6 (footnotes and record citations omitted; footnote added).

Hough was subsequently arrested and charged with the above-referenced offenses, as well as one count of unlawful contact with a minor.[3] Following a jury trial, Hough was found guilty of all charges. Hough filed a post-verdict Motion for a judgment of acquittal on his conviction for unlawful contact with a minor, which the trial court granted. Following a sentencing hearing, the trial court sentenced Hough to eleven-and-a-half to twenty-three months in prison followed by two years of probation for his indecent assault conviction, and a consecutive three-year term of probation for his corruption of minors conviction. Hough filed a post-sentence Motion and a supplemental post-sentence Motion challenging, *inter alia*, the verdict as against the weight of the evidence for his conviction for indecent assault. Post-Sentence Motion, 10/9/20, at 8; Supplemental Post-Sentence Motion, 11/25/20, at 7. On

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] 18 Pa.C.S.A. § 6318(a)(1).

January 5, 2021, the trial court denied Hough's Motions. Hough thereafter filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Hough presents the following question for our review:

> The Commonwealth elicited evidence from [Z.W.], in a leading fashion, that [Hough] had touched her near her butt. Afterward[,] the Commonwealth impeached [Z.W.] with prior statements she made during a forensic interview on the same subject. The portion of the forensic video the jury saw also elicited a response from [Z.W.] based on leading questions. Is a new trial due because the evidence bearing on the element of "indecent contact" was too equivocal and suggestive?

Brief for Appellant at 4.

Hough argues that the trial court erred in denying his challenge to the verdict as against the weight of the evidence because the Commonwealth failed to prove that Hough had indecent contact with Z.W. *Id.* at 8. He argues that indecent contact is a required element in a claim for indecent assault, and that the jury never heard Z.W. state that Hough had touched her buttocks. *Id.* Rather, Hough claims, the jury only heard Z.W. agree with that detail when it was suggested to her. *Id.* In his brief, Hough highlights the following testimony, which Z.W. gave on direct examination:

> [Assistant District Attorney ("ADA")]: Can you tell the jury why you woke up?
>
> [Z.W.]: I woke up because I had felt [Hough] bringing his hand from the back of my pants.

* * *

[ADA]: Okay. Now, whenever you felt his hand in the back of your pants, was his skin touching your skin or something else?

[Z.W.]: Yes, his skin.

[ADA]: Okay. So it would have been underneath your underwear?

[Z.W.]: Yes.

[ADA]: And was it just around the side or where, **what part of your butt** was his hand on?

[Z.W.]: **Like right like by—I can't explain.**

[ADA]: If you need to use a word to describe the area of your body that he was on, you can use that word.

[Z.W.]: He was by my back but a little down.

[ADA]: **Would it have been *near* where your butt is?**

[Z.W.]: Yes.

[ADA]: Okay. Would it have been near where the opening to your butt is?

[Z.W.]: No.

> [Defense Counsel]: Your honor, I would object to this line of leading questions at this point.

> THE COURT: Overruled. She answered the last question.

[ADA]: Now, where his hand was, was it under your underwear or had it not gone down far enough?

[Z.W.]: It hadn't gone down far enough.

Brief for Appellant at 8-10 (citing N.T., 1/30/20, at 102, 104-05) (emphasis in brief).

Hough posits that because Z.W.'s testimony was not sufficient to establish that Hough had touched the "sexual or intimate parts" of Z.W., the Commonwealth impeached Z.W. with her prior inconsistent statement from the forensic interview she gave on January 9, 2019. *Id.* at 10. Hough argues that the forensic interview was leading and that the suggestion of physical contact was from the interviewer. *Id.* Hough set forth the following portion of the forensic interview, which was used to impeach Z.W.:

[Interviewer]: Okay. So you wake up, and you feel something going down your pants, you said? Correct me if I get it wrong. Okay. And what did you feel?

Z.W.: His hand.

[Interviewer]: Okay. And how do you know it was his hand?

Z.W.: Because—at first I thought was my—at first I thought it was, like, [my brother] just hug—like because he always hugs me when we go to sleep. But then I turned around, and I looked at his hand. And then I hurried up and got up and ran into my little brother's room.

[Interviewer]: Okay. And what were you wearing when you went to bed?

Z.W.: Some pink joggers from Pink, Victoria's Secret, and a black shirt from Nike.

[Interviewer]: Okay. And so **when you felt that on your butt**, was it over your clothes, under your clothes, or something else?

Z.W.: Under my clothes.

[Interviewer]: Okay. And were you wearing panties?

Z.W.: Yeah.

[Interviewer]: And was it over your panties or under your panties?

Z.W.: Under.

[Interviewer]: Okay. And when he—**when you felt that on your butt**, what was he doing with his hand?

Z.W.: He was like, putting his hand down my pants.

Brief for Appellant at 11-12 (citing Forensic Interview Transcript, 4/26/19, at 7-8) (emphasis in brief)).[4]  The Commonwealth played a portion of the video of the forensic interview, which included the transcribed portion cited by Hough in his appellate brief.  N.T., 1/31/21, at 175.   Hough argues that given the above testimony, and the suggestiveness of the questioning, "the testimonial evidence bearing on the issue of the nature and location of the touching between [Hough] and [Z.W.] was equivocal, and the prior inconsistent statement was too suggestive that it's shocking for the jury to weigh this evidence in favor of rendering a verdict of guilty."  *Id.* at 13.[5]  He posits that the questions posed to Z.W. "created a mirage" that Hough touched

---

[4] We note there is a discrepancy about the date of the forensic interview. Detective Lippert testified that the interview took place on January 9, 2019. N.T, 1/30/20, at 169.  The video of forensic interview also has a date stamp, which reads January 9, 2019.  However, the transcript of the forensic interview included in the certified record is dated April 26, 2019.  Forensic Interview Transcript, 4/26/19.  Despite the differences in the date, there was only a single forensic interview conducted, and the transcript in the certified record corresponds to the video.

[5] Hough concedes, in his brief, that "he would have no argument if, from [Z.W.'s] mouth, she had stated that [Hough] touched her butt."  Brief for Appellant at 13.

- 7 -

Z.W.'s sexual or intimate parts. *Id.* Hough argues that the touching of Z.W.'s lower back is not a sexual or intimate part of the body. *Id.* Because, according to Hough, he was convicted "only because the trial court gave equal weight to the suggested responses given Z.W.," the verdict against Hough cannot stand, and a new trial is due. *Id.* at 15.

When presented with a challenge to the weight of the evidence, we consider the following:

> "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.
>
> Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*
>
>> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> *Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the

verdict shocks the conscience of the court." ***Id.*** (quotation marks and quotation omitted).

***Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021). Moreover, we note that a challenge to the weight of the evidence "concedes that sufficient evidence was adduced to convict the defendant but that the verdict must nevertheless be overturned because the evidence was untrustworthy and unreliable." ***Commonwealth v. Gaskins***, 692 A.2d 224, 228 (Pa. Super. 1997). Finally, we note that when reviewing a claim that the verdict is against the weight of the evidence, trial judges do not act as a juror; "[r]ather[,] the role of the trial judge is to determine that 'nothwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice.'" ***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (quoting ***Thompson v. City of Philadephia***, 493 A.2d 669, 674 (Pa. 1985)).

As to the crime of indecent assault as set forth in 18 Pa.C.S.A. § 3126(a)(7), an individual is guilty of indecent assault if the person has "indecent contact" with the victim, and the victim is under the age of thirteen. Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. The "sexual or other intimate parts" language has been interpreted by this Court to include more than a person's genitalia, because "such a construction ignores the distinction between 'sexual' and 'other intimate parts,' making the latter term redundant."

*Commonwealth v. Capo*, 727 A.2d 1126, 1127 (Pa. Super. 1999) (finding defendant had indecent contact with victim when he grabbed her by the upper arm, attempting to kiss her mouth but only reaching her face and neck, and rubbed her shoulders, back, and stomach); *see also Commonwealth v. Fisher*, 47 A.3d 155, 158 (Pa. Super. 2012) (finding that "the backs of legs can be intimate parts of the body, just as the shoulders, neck, and back were in *Capo*, when touched for the purpose of arousing or gratifying sexual desire.").

In its Opinion, the trial court found that, although Hough did not specifically state that he was challenging the weight of the evidence, the court interpreted the relief Hough sought as a challenge to the weight of the evidence.[6] Trial Court Opinion, 6/21/21, at 8. The trial court set forth the following analysis:

> Z.W.'s repeated disclosure and testimony of the events of December 14, 2018[,] were consistent with only minor variations as to the exact positioning of [Hough's] hand on her buttock. At trial, Z.W. testified that she fell asleep while watching television with her younger brother in her mother's bedroom located on the 2nd floor of the residence. She was wearing underwear, joggers, and a t-shirt. She was laying on her left side when she was awakened after feeling a hand beneath her underwear, making skin to skin contact with her buttock. Shortly after, while still

---

[6] The trial court also noted that it appears that Hough is not conceding the sufficiency of the evidence, as evidenced by his use of quotation marks around the terms "impeached," which the trial court found to be an attack on the court's ruling on the admission of evidence. Trial Court Opinion, 6/21/21, at 10. The trial court found that, therefore, Hough is not conceding the sufficiency of the evidence, which is required in a weight claim, and that Hough's claim should be denied for that reason. *Id.*

under direct examination, Z.W. was asked if [Hough's] hand went beneath her underwear or "hadn't gone down far enough[,]" and she responded that it hadn't gone down far enough. During her forensic interview[,] which was played for the jury, she told the interviewer that [Hough's] hand had made contact with her buttock. Given that the assault occurred while Z.W. was sleeping[,] it is not inconceivable that there may be a lack of clarity regarding the exact positioning of [Hough's] hand as she was awakened by the event.

There was no contrary evidence presented by the defense, thus by requesting this relief, [Hough] asks the [c]ourt to completely discount Z.W.'s testimony and statements offered during the forensic interview. The [c]ourt does not find [Hough's] argument compelling. Any discrepancies in the victim's testimony are negligible and not of such a nature that they should be either given no weight or that giving them "equal weight with all the facts [would be] to deny justice." [**Widmer**, 744 A.2d at 752.] Simply stated, there is nothing in the record which was likely to shock the trial court's sense of justice and require a new trial in order for justice to prevail.

Trial Court Opinion, 6/21/21, at 11-12.

As the trial court noted, Hough offered no contrary evidence and asked the trial court to completely disregard the evidence presented to the jury. *Id.* at 11. To the extent that Hough argues that the testimonial evidence was not clear that Hough touched Z.W.'s buttock, the resolution of any discrepancies in testimony is for the jury, the ultimate fact-finder and arbiter of the credibility of witnesses. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017). Further, inconsistencies in testimony are not grounds for a new trial on weight of the evidence grounds. *Id.* at 181. This is particularly true, where, as the trial court noted, the assault occurred while Z.W. was sleeping and, as such, it is not inconceivable that Z.W. lacked clarity regarding Hough's

hand position when she awakened. Trial Court Opinion, 6/21/21, at 11; **see also Widmer**, 744 A.2d at 754 (noting that it is important to consider the context of the testimony given and that a person assaulted while asleep may not be able to "recount with certainty events that occurred while she was asleep and simultaneous to her awakening."). Moreover, as discussed *supra*, our case law has established that the "other intimate parts" of an individual refers to more than just that individual's genitalia, breasts, and buttocks. Based upon our review, we conclude that the trial court did not abuse its discretion in denying Hough's weight of the evidence claim, nor does the jury's verdict shock the conscience of this Court. Accordingly, Hough is due no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/19/2021