J-S12002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
QUYDEEM HAWKINS :
:
Appellant : No. 2089 EDA 2024

Appeal from the PCRA Order Entered June 26, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002404-2014

BEFORE: STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED SEPTEMBER 8, 2025**

Appellant, Quydeem Hawkins, who is serving a sentence of life without parole for first degree murder and concurrent terms of imprisonment for other offenses, appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court accurately recounted the evidence against Appellant as follows:

> [A]t at approximately three o'clock in the afternoon of October 21, 2013, [Appellant] and another male snuck around the corner of Ditman and Granite Streets in Philadelphia and began firing at a group of males congregated around the steps of 5121 Ditman Street, resulting in the murder of Khaalid Boyd. Andre Richardson, Domonte Dark, and Kelsey Dark, friends of the deceased, witnessed the shooting. Each gave statements to the police following the shooting, which identified [Appellant], "Quiz" as the gunman.
>
> Andre Richardson testified that on October 21, 2013, at approximately 3:00 in the afternoon, he was outside of 5123 Ditman Street with several friends, including Khaalid Boyd and

Kelsey Dark, when [Appellant], wearing a red hoodie, and an unknown male ran up and started shooting at them. (N.T. 2-10-15, pp. 55-63). Richardson testified that he ran when the shots were fired but returned later to see if Khaalid Boyd was alright. Richardson did not tell the officers at the scene what he had observed as it was his intention to exact retribution for the shooting himself. (N.T. 2-10-15, pp. 65-68).

Domonte Dark's testimony established that he heard gunshots and that Quiz "had on a red hoody and he was shooting at us." (N.T. 2-10-15, pp. 130-131, 142). Dark further stated that "after they finished shooting, they got back into the Honda Accord. Quiz pointed at me and skid off, then he hit a black Ford. I think he was coming after me." (N.T. 2-10-15, p. 144). Domonte believed that "it was over some he say/she say stuff over the block. The problem was between me and him. Someone told him that I was out to kill him." (N.T. 2-10-15, p. 143).

Kelsey Dark testified that he was outside of 5121 Ditman Street on October 21, 2013, when he heard shots and ran. (N.T. 2-10-15, p. 166). At the time he was living next door at 5123 Ditman Street. (N.T. 2-10-15, p. 168). Kelsey Dark was interviewed by the police regarding this incident on October 31, 2013, at which time he stated that his brother, Domonte Dark, "got shot in the leg a couple days ago," in response to whether there were any recent threats made towards him or his brother. (N.T. 2-10-15, p. 177). Detective Charles Grebloski, who took the interview of Kelsey Dark, also testified at trial regarding Kelsey Dark's statements. (N.T. 2-11-15, pp. 46-60).

Kelly Myhausuk, a school psychologist who works at Hardy Middle School, located on Torresdale Avenue, near the 5100 block of Ditman Street, testified as well. (N.T. 2-11-15, pp. 4-5). Ms. Myhausuk testified that on October 21, 2013, she left the school around 3:30 p.m. driving her car at the intersection of Ditman and Granite Streets. (N.T. 2-11-15, pp. 5-6). While at the junction, she saw "two young African American males coming down Granite, hugging the side of the building. I observed them peeking around the corner looking up and down Ditman, which I kind of thought was suspicious." (N.T. 2-11-15, p. 7). "The male closest to me was in a red hoody." (N.T. 2-11-15, pp. 8-9). She observed the man in the red hoodie take out a gun, and then both men proceed into the middle of Ditman Street. (N.T. 2-11-15, pp. 8-12). Ms. Myhausuk testified that she had seen a crowd of people

- 2 -

congregated outside of the third or fourth house from the corner. (N.T. 2-I1-15, p. 12).

When Ms. Myhausuk looked up after the shooting had stopped, she started to proceed through the intersection, but was "hit by a car traveling on Granite," which pushed her car "up onto the sidewalk and [the] air bags deployed." (N.T. 2-11-15, p. 9). She described the car that hit her as a gold, older model sedan, and the passengers in that car to be the same men that had just fired the shots. (N.T. 2-11-15, p. 15). She stated, " I believe the male in the red hoody was driving the car and the male with the white tee shirt was a passenger." (N.T. 2-11-15, p. 15).

There was further evidence provided at trial that a gold Honda was left at the scene, which was processed for evidence, and a video was recovered from a corner store that showed people fleeing the area. (N.T. 2-11-15, pp. 123-125).

PCRA Court Opinion, 6/18/24, at 4-6.[1]

On November 17, 2013, Appellant was charged with murder, attempted murder, conspiracy, firearms not to be carried without a license, recklessly endangering another person, aggravated assault, and possessing an instrument of crime. On February 13, 2015, following a jury trial, Appellant was convicted on all charges. Subsequently, the court imposed sentence. Appellant timely appealed to this Court, which affirmed his judgment of sentence, and our Supreme Court denied his petition for allowance of appeal.

The PCRA court described the PCRA proceedings as follows:

[Appellant] filed his PCRA petition on July 14, 2017. Counsel was appointed who filed a *Finley*[2] letter. A notice of intent to dismiss was sent to all parties on January 31, 2020, following which on

---

[1] The PCRA court's opinion is appended to this memorandum.

[2] *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

- 3 -

March 2, 2020, the petition was dismissed. [Appellant] timely appealed. On May 26, 2020, an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) was sent to [Appellant] requiring [him] to provide a statement of matters complained of on appeal within twenty-one days. Appellant failed to respond and after waiting nearly three months for the 1925(b) statement, this court filed an opinion recommending the dismissal of [Appellant]'s appeal.

On December 16, 2020, an Order was entered by the Superior Court remanding the matter for a determination of whether counsel had abandoned [Appellant]. This court responded that counsel had not abandoned [Appellant] on February 9, 2021, and entered an order allowing counsel to withdraw. [Appellant] then filed a subsequent *pro se* PCRA on February 23, 2021, with a request for extension of time on March 3rd of that year. On the thirty-first of that month, [Appellant] filed a motion for discovery, and on April 26, 2021, the Superior Court remanded again and ordered this court to provide [Appellant] with copies of any requested transcripts and documents that this court deemed necessary and relevant to allow for a complete and judicious assessment of the issues raised on appeal. On June 22, 2021, this court provided all transcripts and discovery to [Appellant]. [Appellant] did not respond, and five months later a notice of intent to dismiss pursuant to Pennsylvania Rule of Criminal Procedure was served on all the parties. Again, having received no response from [Appellant], the petition was dismissed on December 13, 2021.

[On] May 20, 2022, the Superior Court remanded the matter for [Appellant] to file a response to the [notice of intent to dismiss] and/or the 1925(b) order. This court set up a video conference with [Appellant] for June 9, 2022, wherein [Appellant] claimed to have never received the discovery and transcripts this court sent, certified mail, return receipt requested on July 9, 2021. Seven days later, this court again sent the transcripts and discovery, again certified mail, return receipt requested to [Appellant]. On August 9, 2022, [Appellant] then requested photographs of the firearms be provided, which this court ordered the Commonwealth to provide [Appellant]. Pursuant to the directive of the Superior Court, the matter was subsequently continued for [Appellant] to respond to either a [notice of intent to dismiss] or file a 1925(b) statement on October 11, 2022; December 12, 2022; March 15, 2023; June 14, 2023; October 5, 2023; January 4, 2024; and April

4, 2024, at which time a video hearing was scheduled for May 3, 2024. At that hearing, [Appellant] was ordered to file a response. On May 17, [Appellant] filed his response to both the [notice of intent to dismiss] and 1925(b) orders . . .

PCRA Court Opinion, 6/18/24, at 2-3. On June 20, 2024, the PCRA court entered an opinion finding that Appellant's PCRA petition should be dismissed. On June 26, 2024, the court entered an order dismissing Appellant's PCRA petition. Appellant timely appealed to this Court. Although the PCRA court did not file an opinion subsequent to Appellant's appeal, its June 20, 2024 opinion satisfactorily addresses the issues raised in this appeal.

Appellant raises the following issues in his *pro se* appeal, which we paraphrase for purposes of clarity:

1) the prosecutor withheld exculpatory evidence by agreeing with defense counsel that the jury should not see certain property receipts during deliberation;

2) the prosecutor violated the rules of evidence;

3) the prosecutor committed perjury and misled the jury when describing a witness's testimony during the Commonwealth's closing argument;

4) trial counsel was ineffective for not objecting to the prosecutor's alleged misconduct;

5) the evidence was insufficient to convict and instead established his actual innocence;

6) the trial court erred for not correcting the other alleged errors;

7) there was police misconduct with respect to a photo identification;

8) Appellant was a victim of misidentification; and

9) one of the Commonwealth's witnesses was not credible.

Appellant's Brief at 3.

"On appeal from the denial of PCRA relief, our standard of review requires us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." *Commonwealth v. Widgins*, 29 A.3d 816, 819 (Pa. Super. 2011). As this Court has explained:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

Having carefully reviewed the record, the relevant case law, and the parties' briefs, we conclude that the PCRA court's opinion fully and satisfactorily addresses each of the issues raised by Appellant. In brief, the PCRA court correctly resolved each issue as follows: (1) the prosecutor did not withhold alleged exculpatory evidence from the jury, because defense counsel, not the prosecutor, requested that the jury not see certain pieces of evidence during deliberations; (2) Appellant waived his claim that the prosecutor committed "perjury" during closing arguments by failing to identify the manner in which she perjured herself, and in any event, the prosecutor's

closing arguments were a fair response to defense counsel's closing argument; (3) Appellant waived his claims that the prosecutor confused the jury, harbored a "malicious motive," and violated rules of evidence by failing to identify the alleged confusing acts, malicious motive, or rules of evidence; (4) Appellant's claims of ineffective assistance of trial counsel repeat the same vague and baseless claims of prosecutorial misconduct addressed above; (5) Appellant waived his claim that the court gave improper instructions to the jury by failing to identify the alleged improper instructions; (6) Appellant waived his claim of ineffective assistance of PCRA counsel by failing to identify the manner in which PCRA counsel was ineffective; (7) Appellant waived his claim that he was misidentified by failing to develop this argument, relying instead on the vague assertion that "scientific research study after study revealed a troubling lack of reliability in eyewitness identifications, from social science research to the view of actual police lineups, from laboratory experiments to DNA exonerations and finger print lifting"; (8) Appellant waived his claim that the police engaged in misconduct by "showing [his] picture singly to a witness [in violation of] the [d]efendant's 14th Amendment [rights]," because Appellant failed to identify the person whom the police showed the single picture and the testimony specifying this allegedly conduct; (9) Appellant waived his claim that the police falsified documents by failing to identify the alleged falsified documents; (10) Appellant waived his claim that the police convinced Andre Richardson to frame him for the murder by failing

to identify any evidence in support of this claim; (11) the evidence was sufficient to sustain his murder conviction; and (12) Appellant's murder conviction was not against the weight of the evidence. PCRA Court Opinion, 6/18/24, at 6-23.

Accordingly, we affirm on the basis of the PCRA court's opinion and conclude that the PCRA court properly denied relief. The parties are directed to attach a copy of the PCRA court's opinion in the event of further proceedings.

Order affirmed. Application to add alleged after discovered evidence to brief denied. Application for evidentiary hearing denied. Application to preclude new trial based on double jeopardy denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/8/2025

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL TRIAL DIVISION |
| | : | |
| | : | |
| v. | : | 1177 EDA 2020 |
| | : | |
| | : | |
| QUYDEEM HAWKINS | : | CP-51-CR-0002404-2014 |

**SUPPLEMENTAL OPINION**

Received

JUN 2 0 2024

Office of Judicial Records
Appeals/Post Trial

O'KEEFE, J.

Quydeem Hawkins appeals from the order denying his Post-Conviction Relief Act Petition (hereinafter referred to as "PCRA" for the sake of brevity) pursuant to 42 Pa.C.S. § 9541 *et seq.*

## PROCEDURAL HISTORY:

Defendant, Quydeem Hawkins, was arrested on November 17, 2013, and charged with murder, attempted murder, conspiracy, firearms not to be carried without a license, recklessly endangering another person, aggravated assault, and possessing an instrument of crime. The defendant was held over for court on all charges after a preliminary hearing on March 4, 2014. A jury trial was held from February 9, 2015 through February 13, 2015, following which the defendant was convicted of the above-noted crimes. Mr. Hawkins was sentenced to life without parole for first degree murder and concurrent terms of confinement for the remaining charges. (N.T. 2-13-15, pp. 16-17). The defendant timely appealed. The Superior Court affirmed the trial court on March 15, 2016, *Commonwealth v. Hawkins*, 538 EDA 2015, 144 A.3d 199 (Table) and the Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal on July 19, 2016. *Commonwealth v. Hawkins*, 636 Pa. 659, 145 A.3d 163 (Table).

FILED

JUN 1 8 2024

Appeals/Post Trial
Office of Judicial Records

1

Mr. Hawkins filed his PCRA petition on July 14, 2017. Counsel was appointed who filed a *Finley*[1] letter. A notice of intent to dismiss was sent to all parties on January 31, 2020, following which on March 2, 2020, the petition was dismissed. The defendant timely appealed. On May 26, 2020, an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) was sent to the defendant requiring Mr. Hawkins to provide a statement of matters complained of on appeal within twenty-one days. Appellant failed to respond and after waiting nearly three months for the 1925(b) statement, this court filed an opinion recommending the dismissal of Mr. Hawkins' appeal.

On December 16, 2020, an Order was entered by the Superior Court, remanding the matter for a determination of whether counsel had abandoned the Appellant. This court responded that counsel had not abandoned Hawkins on February 9, 2021, and entered an order allowing counsel to withdraw. Mr. Hawkins then filed a subsequent *pro se* PCRA on February 23, 2021, with a request for extension of time on March 3rd of that year. On the thirty-first of that month the defendant filed a motion for discovery and on April 26, 2021, the Superior Court remanded again and ordered this court to provide the defendant with copies of any requested transcripts and documents that this court deemed necessary and relevant to allow for a complete and judicious assessment of the issues raised on appeal. On June 22, 2021, this court provided all transcripts and discovery to the defendant. Hawkins did not respond and five months later a notice of intent to dismiss pursuant to Pennsylvania Rule of Criminal Procedure was served on all the parties. Again, having received no response from the defendant, the petition was dismissed on December 13, 2021.

May 20, 2022, the Superior Court remanded the matter for the defendant to file a response to the 907 and/or the 1925(b) order. This court set up a video conference with the defendant for

---

[1] *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988).

June 9, 2022, wherein the defendant claimed to have never received the discovery and transcripts this court sent, certified mail, return receipt requested on July 9, 2021. Seven days later, this court again sent the transcripts and discovery, again certified mail, return receipt requested to the defendant. On August 9, 2022, Hawkins then requested photographs of the firearms be provided, which this court ordered the Commonwealth to provide the defendant. Pursuant to the directive of the Superior Court, the matter was subsequently continued for the defendant to respond to either a 907 or file a 1925(b) statement on October 11, 2022; December 12, 2022; March 15, 2023; June 14, 2023; October 5, 2023; January 4, 2024; and April 4, 2024, at which time a video hearing was scheduled for May 3, 2024. At that hearing, the defendant was ordered to file a response. On May 17th, the defendant filed his response to both the 907 and 1925(b) orders, which this Supplemental opinion will address.

## STANDARD OF REVIEW:

The standard and scope of review for the denial of a PCRA petition is well-settled. The appellate court examines a PCRA appeal in the light most favorable to the prevailing party at the PCRA level. The court's review is limited to the findings of the PCRA court and the evidence of record. Additionally, the reviewing court grants great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. In this respect, the appellate court will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. However, where the petitioner raises questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super.2014), *appeal denied*, 101 A.3d 785 (Pa.2014) (citations and quotation marks omitted).

3

## FACTS:

The facts, when viewed in the light most favorable to the Commonwealth as the verdict-winner, show that at approximately three o'clock in the afternoon of October 21, 2013, the defendant, Quydeem Hawkins, and another male snuck around the corner of Ditman and Granite Streets in Philadelphia and began firing at a group of males congregated around the steps of 5121 Ditman Street, resulting in the murder of Khaalid Boyd. Andre Richardson, Domonte Dark and Kelsey Dark, friends of the deceased, witnessed the shooting. Each gave statements to the police following the shooting, which identified the defendant, 'Quiz' as the gunman.

Andre Richardson testified that on October 21, 2013, at approximately 3:00 in the afternoon, he was outside of 5123 Ditman Street with several friends, including Khaalid Boyd and Kelsey Dark, when the defendant, wearing a red hoodie, and an unknown male ran up and started shooting at them. (N.T. 2-10-15, pp. 55-63). Mr. Richardson testified that he ran when the shots were fired but returned later to see if Khaalid Boyd was alright. Richardson did not tell the officers at the scene what he had observed as it was his intention to exact retribution for the shooting himself. (N.T. 2-10-15, pp. 65-68).

Domonte Dark's testimony established that he heard gunshots and that Quiz "had on a red hoody and he was shooting at us." (N.T. 2-10-15, pp. 130-131, 142). Mr. Dark further stated that "after they finished shooting, they got back into the Honda Accord. Quiz pointed at me and skid off, then he hit a black Ford. I think he was coming after me." (N.T. 2-10-15, p. 144). Domonte believed that "It was over some he say/she say stuff over the block. The problem was between me and him. Someone told him that I was out to kill him." (N.T. 2-10-15, p. 143).

Kelsey Dark testified that he was outside of 5121 Ditman Street on October 21, 2013, when he heard shots and ran. (N.T. 2-10-15, p. 166). At the time he was living next door at 5123 Ditman

4

Street. (N.T. 2-10-15, p. 168). Kelsey Dark was interviewed by the police regarding this incident on October 31, 2013, at which time he stated that his brother, Domonte Dark "got shot in the leg a couple days ago," in response to whether there were any recent threats made towards him or his brother. (N.T. 2-10-15, p. 177). Detective Charles Grebloski, who took the interview of Kelsey Dark, also testified at trial regarding Kelsey Dark's statements. (N.T. 2-11-15, pp. 46-60).

Kelly Myhausuk, a school psychologist who works at Hardy Middle School, located on Torresdale Avenue, near the 5100 block of Ditman Street testified as well (N.T. 2-11-15, pp. 4-5). Ms. Myhausuk testified that on October 21, 2013, she left the school around 3:30 p.m. driving her car at the intersection of Ditman and Granite Streets. (N.T. 2-11-15, pp. 5-6). While at the junction, she saw "two young African American males coming down Granite, hugging the side of the building. "I observed them peeking around the corner looking up and down Ditman, which I kind of thought was suspicious." (N.T. 2-11-15, p. 7). "The male closest to me was in a red hoody." (N.T. 2-11-15, pp. 8-9). She observed the man in the red hoodie take out a gun, and then both men proceed into the middle of Ditman Street. (N.T. 2-11-15, pp. 8-12). Ms. Myhausuk testified that she had seen a crowd of people congregated outside of the third or fourth house from the corner. (N.T. 2-11-15, p. 12).

When Ms. Myhausuk looked up after the shooting had stopped, she started to proceed through the intersection, but was "hit by a car traveling on Granite," which pushed her car "up onto the sidewalk and [the] air bags deployed." (N.T. 2-11-15, p. 9). She described the car that hit her as a gold, older model sedan, and the passengers in that car to be the same men that had just fired the shots. (N.T. 2-11-15, p. 15). She stated, "I believe the male in the red hoody was driving the car and the male with the white tee shirt was a passenger." (N.T. 2-11-15, p. 15).

There was further evidence provided at trial that a gold Honda was left at the scene, which

was processed for evidence, and a video was recovered from a corner store that showed people fleeing the area. (N.T. 2-11-15, pp. 123-125).

## LEGAL DISCUSSION:

### *Prosecutorial Misconduct*

Appellant first raises several instances of alleged prosecutorial misconduct. They will be addressed *ad seriatum*.

### *Brady Violation*

Under *Brady*[2] and its prodigy, the suppression of evidence favorable to an accused, by the prosecution, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. To constitute a Brady violation, the withheld evidence must have been in the exclusive control of the prosecution at the time of trial. *See Commonwealth v. Robinson*, 122 A.3d 367, 373 (Pa.Super.2015). For a successful Brady violation case, the defendant "must show that (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to [the accused]; and (3) he was prejudiced by the concealment." *Commonwealth v. Simpson*, 620 Pa. 60, 79, 66 A.3d 253, 269 (2013) (citing *Commonwealth v. Paddy*, 569 Pa. 47, 64-65, 800 A.2d 294, 305 (2002); *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). Prejudice must be such as to demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

6

*Commonwealth v. Clark*, 599 Pa. 204, 219, 961 A.2d 80, 89 (2008) (quoting *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1141 (2001)).

Hawkins first complains that "the prosecutor withheld exculpatory evidence, after the jury requested to view the evidence." "See: (N.T. 2-13-15 pg.8) – BRADY Violation....."Property Receipt 3104566", "Property Receipt 3104567," "Commonwealth Exhibit C-86", Commonwealth Exhibit C-87."". (Statement of Matters Complained of on Appeal, p. 1).[3] During deliberations, the jury sent out seven questions requesting certain evidence be sent back to them to consider. A conference was held between the court and counsel as to the appropriateness of the requested documents. The following discussion occurred between the court, Mr. Wallace – the defense attorney and the prosecutor:

> "MR. WALLACE: ... You can't send it out as is because there is a property receipt for guns on 4th Street which you excluded.
> THE COURT: What do you want removed?
> MR. WALLACE: 86, 87. I don't think the arrest warrant either, judge."
> (N.T. 2-13-2015, pp. 7-8).

It is crystal clear that it was defense counsel who requested that exhibit 86 and 87 not be sent back to the jurors and accordingly, this claim of prosecutorial misconduct fails.

*Perjury*

Appellant next contends "The prosecutor violated the defendant's 5th, 6th, & 14th Amendment (N.T. 2-12-15 pg.44) – Then See (N.T. 2-10-15 pg59)." (Statement of Matters Complained of on Appeal, p. 2).

---

[3] Appellant filed a somewhat detailed 1925(b) statement, however his 907 response summarily repeated the same claims. Such as BRADY VIOLATION, claims "The following issues display's numerous merited claims. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, INEFFECTIVE PROSECUTORIAL MISCONDUCT, INEFFECTIVE ASSISTANCE OF PCRA COUNSEL, LACK OF EVIDENCE, POLICE MISCONDUCT, COURT ERRORS, MISIDENTIFICATION, WITNESS CREDIBILITY, VIOLATION OF UNITED STATES CONSTITUTIONAL AMENDMENTS 5t, 6th, 14th, VIOLATION OF PENNSYLVANIA RULES OF EVIDENCE. MALICIOUS MOTIVE, PERJURY BY PROSECUTION. PERJURY BY WITNESS." [sic]. (907 Response, p. 1).

7

Mr. Hawkins does not state what it was about the prosecutor's statements was perjurious or violative of the Fifth, Sixth or Fourteenth Amendments. Failure of a defendant to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the trial court is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth vs. Dowling,* 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray,* 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler,* 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas,* 747 A.2d 1236, 1237 (Pa.Super.2000)).

The transcript for the identified notes of testimony concerning the testimony of Andre Richardson is as follows:

> A. "Yeah. We all know what happened. Yeah, yeah, something happened.
> Q. What happened?
> A. That bitch ass nigger right there. (Indicating)
> Q. Right where?
> THE DEFENDANT: You bitch –
> THE WITNESS: You were high, you bitch ass.
> THE COURT: Mr. Richardson, answer the questions.
> THE WITNESS: I don't care what you say to me. Ain't like that in jail. Tell him to stop running his fucking mouth.
> THE DEFENDANT: Fuck you, man.
> THE COURT: Take the jury out of the room.
> ***
> (Whereupon the jury panel, having been excused from the jury box)
> ***
> THE COURT: Mr. Richardson, you're not to have any conversations with the defendant. You are to answer the questions presented by –
> THE WITNESS: I'm answering the questions. I answered the questions. I called him a "bitch ass."
> THE COURT: Mr. Richardson, listen to me or I will hold you in contempt. You are not to have any discussions or conversations with the defendant. You are to only answer the questions presented.
> I would prefer that you look at the jury – Mr. Hawkins, you are to sit there without trying to have conversations with any of the

witnesses. If you wish to testify, you will be given your chance. If not, I will hold you in contempt. Do you understand?"

(N.T. 2-10-2015, pp. 59-60).

The complained of closing by the prosecutor is as follows:

"And why? That's right, Mr. Wallace, some he said, she said. So Khalid Boyd and his family, he loses his life over some he said, she said. What kind of crap is that?

And of course, they don't come in here and do the right thing. No, no. Because there is a code on the street. Do you think they know that when the detective is writing down everything they say that when they get up here, I'm going to be able to read it back and you are going to be able to use that. You see these statements here? The judge is going to tell you when he gives you the law, you can use those statements as substantive evidence. And all that is a big fancy word as if they got up here and said those things that are in that statement.

Mr. Wallace wants to call it lying? Listen, when Andre Richardson took that stand, you are not blind. You are not deaf. You saw the exchange between those two. He called him names. He called him rat. You don't want to be a rat in this city. You don't want to be a snitch in this city. But it was too late. He already took down what he said. And they both said the same thing on the same day to the same detective."

(N.T. 2-12-2015, pp. 44-45).

The law is clear that comments by a prosecutor only constitute reversible error where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. *Commonwealth v. Bryant*, 620 Pa. 218, 67 A.3d 716, 727 (2013); *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 307 (2011). Moreover, it has long been the law in Pennsylvania that prosecutors have considerable latitude during closing arguments and are permitted to comment on the evidence or appropriate inferences to be drawn from the evidence, and in the process, to employ oratorical flair. *See Commonwealth v. Kennedy*, 598 Pa. 621, 959 A.2d 916, 923 (2008) (prosecutor did not engage in improper argument by twice referring to defendant as a homicidal predator); *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa.Super.2008).

9

Remarks made by a prosecutor during summation must be examined within the context of defense counsel's conduct since it is well settled that a prosecutor may fairly respond to points made by the defense. *Commonwealth v. Chmiel* 585 Pa. 547, 889 A.2d 501 (2005). Furthermore, comments by a prosecutor do not warrant judicial relief unless the unavoidable effect of those comments is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weight the evidence objectively and render a fair verdict. *Commonwealth v. Tedford,* 589 Pa. 639, 960 A.2d 1, 33 (2008); *Commonwealth v. Rios,* 591 Pa. 583, 617, 920 A.2d 790, 809 (2007).

While the courts have held that it is improper for a district attorney to express their personal opinion about a defendant's guilt, the courts have also clearly stated that "a district attorney must have reasonable latitude in fairly presenting a case to the jury and that he or she must be free to present his or her arguments with 'logical force and vigor.'" *Commonwealth v. Smith,* 490 Pa. 380, 387, 416, A.2d, 986, 989 (1980) (quoting *Commonwealth v. Cronin,* 464 Pa. 138, 143, 346 A.2d 59, 62 (1975)). It is entirely proper for a prosecutor to summarize the evidence that has been presented and to offer reasonable inferences from the evidence and to argue that the evidence establishes the defendant's guilt. *Commonwealth v. Hutchinson,* 611 Pa. 280, 25 A.3d 277, 307 (2011) (citing *Commonwealth v. DeJesus,* 580 Pa. 303, 800 A.2d 102, 112 (2004)). "Furthermore, the district attorney may always argue to the jury that the evidence establishes the defendant's guilt. Finally, the prejudicial effect of the district attorney's remarks must be evaluated in the context in which they occurred." *Commonwealth v. Smith, supra.*

Further, "reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors, and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." *Common-*

10

*wealth v. Hanible*, 612 Pa. 183, 248, 30 A.3d 426, 465 (2011) (quoting *Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666, 685 (2009)). A review of both closings clearly shows that the prosecutor's remarks were in response to the defendant's closing and could not have prejudiced the jury to preclude them from fairly weighing the evidence and rendering a true verdict.

Prior to the presentation of opening statements by counsel, the jury was instructed:

> "As I told you earlier, you're the sole judges of the facts, and credibility, and weight of the evidence. You must rely on your own recollection and evaluation of the evidence during your deliberations and not mine or counsels'.
>
> You're not bound by any opinion that counsel or I might express about the guilt, innocence, credibility or weight of evidence, facts proven by the evidence, or inferences to be drawn from the facts.
>
> You should consider the statements and arguments of counsel carefully even though they are not binding on you and not evidence.
>
> You may be guided by them if the statements and arguments are supported by the evidence and appeal to your reason and judgment." (N.T. 2-10-2015, pp. 11-12).

The jury was issued this more detailed admonition in advance of closing arguments:

> "Now, speeches of counsel are not part of the evidence and you should not consider them as such. However, in deciding the case you should carefully consider the evidence in light of the various reasons and arguments each lawyer presented. It is the right and duty of each lawyer to discuss the evidence in a manner that was most favorable from the side they represent. You should be guided by each lawyer's argument to the extent they are supported by the evidence and insofar as they aide you in applying your own reason and common sense. However, you are not required to accept the arguments of either lawyer. It is for you and you alone to decide the case based on the evidence as it was presented through the witness stand and in accordance with the instructions I am giving you.

(N.T. 2-12-2015, p. 84).

A review of both attorney's closings clearly shows that the prosecutor's remarks were in response to the defendant's closing and could not have prejudiced the jury to preclude them from fairly weighing the evidence and rendering a true verdict.

## Confused and Misled the Jury

Appellant next lists ten pages in the notes of testimony under the heading of confused and misled the jury. A review of the cited transcript pages does not show any obvious attempt to confuse or mislead the jury and Hawkins is not specific in his complaints. Again, failure of a defendant to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the trial court is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth vs. Dowling*, 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas*, 747 A.2d 1236, 1237 (Pa.Super.2000)). Consequently, this claim is without merit.

## Malicious Motive

Appellant next avers "Malicious motive" presumably by the prosecutor, although that is not clear, citing three pages from the transcript of the trial. No further explanation has been provided. In what seems like a refrain in this opinion, failure of a defendant to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the trial court is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth vs. Dowling*, 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*,

756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas*, 747 A.2d 1236, 1237 (Pa.Super.2000)). Thus, this averment needs to be dismissed.

*Prosecutor violated Rules of Evidence and Standards*

Hawkins next attacks the prosecutor as violating several Rules of Evidence, Rules of Judicial Administration, and ABA Standards for Criminal Justice, again with no specificity. Once more, the undersigned would be required to guess what Appellant's complaints are and as such his failure to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the undersigned is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth vs. Dowling*, 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas*, 747 A.2d 1236, 1237 (Pa.Super.2000)). Again, Appellant has not met any burden of proof to sustain this claim, and it should be dismissed.

*Ineffective Assistance of Counsel*

Appellant raises two issues contending trial counsel was ineffective. The law in Pennsylvania is straightforward that counsel is presumed effective and a defendant claiming ineffective assistance of counsel bears the burden of proving otherwise. *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795 (2014); *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (1993). In order to overcome this presumption, a defendant must meet a three-component standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): First, the underlying claim must have arguable merit. *Commonwealth v. Lauro*, 819 A.2d 100, 105-106 (Pa.Super.2003); *Commonwealth v. Rollins*, 558 Pa. 532, 542, 738 A.2d 435, 441 (1999); *Com-*

13

*monwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, no reasonable basis must exist for counsel's actions or failure to act. In making this determination, the appellate court does not question whether there was a more logical course of action which counsel could have pursued, but rather did counsel's decision have any reasonable basis. *Commonwealth v. Rollins, supra*, 558 Pa. at 542, 738 A.2d at 441. Lastly, the defendant must establish that he suffered prejudice because of counsel's error, such that there is a reasonable probability that the outcome of the proceeding would have been different absent such an error. *Commonwealth v. Fears, supra*, 642 Pa. at 461, 86 A.3d at 804; *Commonwealth v. Lesko*, 609 Pa. 128, 15 A.3d 345, 373-74 (2011) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987)). It is not enough for the defendant to claim that counsel could have taken different steps, but rather, he must prove that counsel's strategy was "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74, 77 (1983); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764, 775 (1986). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Vandivner*, 634 Pa. 482, 490, 130 A.3d 676, 680 (2015). To obtain relief based upon a claim of ineffective assistance of counsel, a petitioner must establish by a preponderance of evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(ii).

Mr. Hawkins contends counsel was ineffective in failing to present exculpatory evidence to the jury, specifically Commonwealth Exhibits 86 and 87. (Statement of Matters Complained of on Appeal, p. 3). The issue was conclusively addressed in the previous section alleging prosecutorial misconduct and is adopted herein.

The second claim of ineffective assistance of trial counsel was his failure to object to the violation of the defendant's Sixth and Fourteenth Amendments to the United Staes Constitution. (Statement of Matters Complained of on Appeal, p. 3). Once more, this issue was addressed in the prosecutorial section of this opinion and is adopted herein for the sake of brevity.

### Court Error

Mr. Hawkins next avers the court failed to present exculpatory evidence (C-86 and 87) and violated the defendant's Sixth and Fourteenth Amendment rights. (Statement of Matters Complained of on Appeal, p. 3). These claims appear to be the same complaints he raised against the prosecutor and trial counsel and have previously been discussed.

Then Hawkins contends this court committed perjury during the closing instructions and makes an accusation that the undersigned tampered with the evidence, again without any specificity. Once more, the undersigned would be required to guess what Appellant's complaints are and as such his failure to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the undersigned is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth vs. Dowling,* 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray,* 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler,* 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas,* 747 A.2d 1236, 1237 (Pa.Super.2000)).

Furthermore, a trial court is bound to charge a jury on the correct legal principles applicable to the facts presented at trial. *Commonwealth v. Cox,* 546 Pa. 515, 686 A.2d 1279 (1996). The trial court has broad discretion in how it phrases its instructions to a jury, so long as the law is clearly, adequately and accurately presented to the jury for its consideration. *Commonwealth v.*

15

*Gibson*, 553 Pa. 648, 665, 720 A.2d 473, 481 (1998) (citing *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998)). The law is clear that the court's charge must be read as a whole and not in isolated portions. *Commonwealth v. Sandusky*, 203 A.3d 1033, 1098 (Pa.Super.2019), *appeal denied*, 216 A.3d 1029 (Pa., July 24, 2019); *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa.Super.2014); *Commonwealth v. Garcia*, 847 A.2d 67, 73 (Pa.Super.2004); *Commonwealth v. Overby*, 575 Pa. 227, 836 A.2d 20, 24 (2003). As noted by our Superior Court:

> "[a] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa.Super.2006) (citations omitted).

The jury instruction was appropriate according to the testimony presented during the trial, and counsel cannot be deemed ineffective for failing to object to the charge. Once again, Hawkins fails to meet any burden of proof to sustain this claim, and it is without merit.

### *Ineffective Assistance of PCRA Counsel*

The standards for an ineffective assistance of counsel claim were previously presented in this opinion. Hawkins complaint in this issue is that PCRA counsel improperly submitted a *Finley*[4] no-merit letter and as such deprived him of his right to representation. Mr. Hawkins fails to identify the specifics of this claim. Once more, the undersigned would be required to guess what Appellant's complaints are and as such his failure to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the undersigned is impeded in its preparation of a legal analysis

---

[4] *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988)

16

pertinent to those issues. *Commonwealth vs. Dowling*, 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray*, 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas*, 747 A.2d 1236, 1237 (Pa.Super.2000)). This claim is without merit.

## *Misidentification*

The law in Pennsylvania is clear that evidence of an identification of a defendant by a witness will be admitted unless the identification is the result of police misconduct. *Commonwealth v. Spencer*, 432 Pa.Super. 631, 639 A.2d 820 (1994). It is likewise well-settled that where the circumstances demonstrate an independent basis for the identification, even pre-trial impermissibly suggestive procedures will not bar subsequent in-court identifications. *Commonwealth v. McGaghey*, 510 Pa. 225, 507 A.2d 357 (1986). The central inquiry in reviewing the propriety of identification evidence is whether or not, under the totality of the circumstances, the identification was reliable. *Commonwealth v. Kearney*, 92 A.3d 51, 65 (Pa.Super.2014). "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa.Super.2003), *appeal denied*, 578 Pa. 694, 851 A.2d 142 (2004).

Appellant merely claims "scientific research study after study revealed a troubling lack of reliability in eyewitness identifications, from social science research to the view of actual police lineups, from laboratory experiments to DNA exonerations and finger print lifting…" (Statement of Matters Complained of on Appeal, p. 4). Hawkins neither cites these treatises nor the testimony from which a misidentification could be found in his case. The failure to develop this issue is fatal.

17

*Police Misconduct*

Appellant next raises several alleged instances of police misconduct claiming these should provide him acquittal of the charges.

*Single Suspect in Photo Display*

Mr. Hawkins claims that "showing the defendant's picture singly to a witness violates the defendant's 14[th] Amendment's." [sic] (Statement of Matters Complained of on Appeal, p. 5). Appellant does not inform us to whom the single picture was shown, where in the testimony to find the allegedly improper conduct, nor any statute, precedent, or authority of any nature for his proposition. As noted numerous times in this already too long opinion, guessing what the defendant's complaint is not acceptable and the issue is waived. *Commonwealth vs. Dowling,* 778 A.2d 683, 686 (Pa.Super.2001); *Commonwealth v. Ray,* 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000); *Commonwealth v. Butler,* 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas,* 747 A.2d 1236, 1237 (Pa.Super.2000)). Again, this claim fails.

*Falsification of documents*

Appellant contends Detectives Hesser and Santamala falsified documents, citing the trial transcript from February 10, 2015 at pages 85 and 86 and Andre Richardson's statement of November 13, 2013. (Statement of Matters Complained of on Appeal, p. 5). No description of the alleged falsification is put forth by the defendant. Apparently, Mr. Hawkins expects this court to present his argument concerning this claim for him, yet again. His failure to adequately identify, in a concise manner, the issues he seeks to pursue on appeal, the undersigned is impeded in its preparation of a legal analysis pertinent to those issues. *Commonwealth vs. Dowling,* 778 A.2d

18

683, 686 (Pa.Super.2001); *Commonwealth v. Ray,* 134 A.3d 1109, 1114 (Pa.Super.2016); *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler,* 756 A.2d 55, 57 (Pa.Super.2000) (citing *Giles v. Douglas,* 747 A.2d 1236, 1237 (Pa.Super.2000)). This claim is without merit.

## *Convincing Witness to Frame Defendant*

Hawkins claims "Detective Edward Oleyn convinced the witness Andre Richardson to frame the defendant for the murder, according to Kelsey Dark, who told the defendant's trial counsel. See: Andre Richardson statement on 10-26-13." (Statement of Matters Complained of on Appeal, p. 5). The defendant has provided no statement, or evidence of any manner from trial counsel to corroborate this claim. Furthermore, a review of Mr. Richardson's statement of October 26, 2013, fails to substantiate the claim. Once again, Appellant has failed to meet any burden of proof to bear out this claim and as such it is without merit.

## *Sufficiency of the Evidence*

Defendant's next claim of error is that there was insufficient evidence as a matter of law to find him guilty of murder of the first degree. When evaluating a claim of insufficiency of the evidence, we must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). Further, the evidence must be viewed "in the light most favorable to the Commonwealth as the verdict winner and, accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.* "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

circumstances." *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa.Super.2013) (citing *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007)).

Under a sufficiency of the evidence claim, "the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated, and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence." *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 517 (2005) (quoting *Commonwealth v. Watkins*, 577 Pa. 194, 843 A.2d 1203, 1211 (2003)).

"Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Bohonyi,* 900 A.2d 877, 881-882 (Pa.Super.2006) (quoting *Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa.Super.2006)). However, if the evidence "is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." *Commonwealth v. Heater*, 899 A.2d 1126, 1131 (Pa.Super.2006) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000)).

A review of the record shows that this issue was raised on direct appeal, wherein the Superior Court affirmed the sufficiency as well as judgment of sentence. *Commonwealth v. Hawkins,* 538 EDA 2015. As such, the claim has been previously litigated and meritless.

### *Weight of the Evidence*

Defendant's last claim is that Andre Richardson's lack of credibility was such that his conviction was against the weight of the evidence. (Statement of Matters Complained of on

20

Appeal, p. 6). A claim that the verdict was contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000). "[T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super1997) (citing *Commonwealth v. Simmons*, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995)). A defendant's request for a new trial based on the argument that the verdict was against the weight of the evidence will only be granted when the verdict is so contrary to the evidence as to make the award of a new trial imperative. *Commonwealth v. Mason*, 559 Pa. 500, 513, 741 A.2d 708, 715 (1999); *Commonwealth v. Auker*, 545 Pa. 521, 541, 681 A.2d 1305, 1316 (1996).

Addressing the defendant's weight of the evidence argument, it must be noted that "[a]n allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa.Super.2004) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751-752 (2000)). The Pennsylvania Supreme Court has explained that appellate review of a weight of the evidence claim is a review of the exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Id.* "A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa.Super.2005) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 805-806 (Pa.Super.2003), *app. denied*, 574 Pa. 773, 833 A.2d 143 (2003) (emphasis omitted). A new trial should be awarded when the trial court believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. *Commonwealth v.*

21

*Lloyd*, 878 A.2d 867, 872 (Pa.Super.2005) (citing *Thompson v. City of Philadelphia*, 507 Pa. 592, 598, 493 A.2d 669, 672 (1985)). "Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (emphasis omitted). Stated another way, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Dupre, supra*, 866 A.2d at 1102 (quoting *Commonwealth v. Sullivan, supra*, 820 A.2d at 805-806). "The question the trial court must answer, in the sound exercise of its discretion, is whether 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* (citing *Commonwealth v. Widmer, supra*, 744 A.2d at 752). Because the trial judge heard and saw the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial court concerning a weight of the evidence determination. *Commonwealth v. Dupre, supra*, 866 A.2d at 1102 (citing *Commonwealth v. Widmer, supra*, 744 A.2d at 753). "A trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is 'one of the least assailable reasons for granting or denying a new trial.'" *Commonwealth v. Dupre, supra*, 866 A.2d at 1102 (citing *Commonwealth v. Sullivan, supra*, 820 A.2d at 806; *Commonwealth v. Widmer, supra*, 744 A.2d at 753). When the weight of the evidence challenge is predicated on the credibility of testimony presented at trial, appellate review of the trial court's decision is extremely limited. *Commonwealth v. Rossetti, supra*, 863 A.2d at 1191 (quoting *Commonwealth v. Hunter*, 381 Pa.Super. 606, 554 A.2d 550, 555 (1989)). "Generally, unless the evidence is so

unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Id.*

This court concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it so tenuous, vague and uncertain that it shocks the conscience of the court. To the contrary, the evidence in this case was compelling and substantial, and strongly supported the verdict. This court observed Mr. Richardson and finds that he and his testimony were credible. Accordingly, this claim of the defendant is without merit.

Accordingly, the dismissal of the defendant' Post-Conviction Relief Act petition should be affirmed.

BY THE COURT:

_____
J. SCOTT O'KEEFE, J.

DATE: June 20, 2024

23

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     :     **CRIMINAL TRIAL DIVISION**

v.     :     **1177 EDA 2020**

**QUYDEEM HAWKINS**     :     **CP-51-CR-0002404-2014**

### Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defendant:
     Quydeem Hawkins
     LX-4505
     S.C.I. Greene
     169 Progress Drive
     Waynesburg, PA 15370

Type of Service:     ( ) Personal **(X)** First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:
     Lawrence Jonathan Goode, Esquire
     Appeals Unit
     District Attorney's Office
     3 South Penn Square
     Philadelphia, PA 19107

Type of Service:     ( ) Personal ( ) First Class Mail **(X)** Interoffice ( ) Other, please specify

Date: June 20, 2024

Allison M. O'Keefe, Law Clerk